IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Case No.: 1:06CV01856 |
| | : | Judge Rosemary M. Collyer |
| DAVID HERSKOWITZ, et al , | : | |
| | : | |
| Defendant | : | |

### DEFENDANT'S MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Defendant David Herskowitz, by and through his attorney Wortman & Nemeroff, P.A., pursuant to Fed.R.Civ.P. 12(b)(2) and (3), hereby files this Motion to Dismiss For Lack of Personal Jurisdiction and Improper Venue, and for reasons therefor respectfully refers this honorable court to his Memorandum of Points and Authorities attached hereto.

WHEREFORE, Defendant David Herskowitz respectfully requests that his Motion to Dismiss be granted.

Respectfully submitted,

WORTMAN & NEMEROFF, P.A.


_____/s/_____
Steven M. Nemeroff Bar #416861
Attorney for Defendant
7700 Old Georgetown Road
Suite 520
Bethesda, Maryland 20814
(301) 986-5200

## Request for a Hearing

Defendant requests a hearing on all issues raised herein.

_____/s/_____
Steven M. Nemeroff

## Exhibits – Affidavits

Defendant's counsel has electronically filed an executed Affidavit as Exhibit "A" and certifies that he has the original executed Affidavit and will retain the original Affidavit in his possession, without alteration.

_____/s/_____
Steven M. Nemeroff

## Certificate of Service

I HEREBY CERTIFY that on the 21st day of November, a copy of the foregoing Motion to Dismiss For Lack of Personal Jurisdiction and Improper Venue, Memorandum of Points and Authorities, Exhibits and Order were mailed prepaid postage to James M. Loots, Esquire, 236 Massachusetts Avenue, NE, Suite 204, Washington, DC 20002 and Phillip Banks, 405 Glen Arbor Court, King of Prussia, Pennsylvania 19406.

_____/s/_____
Steven M. Nemeroff

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

STEPHEN SCHUTTER         :
                                 :
      Plaintiff             :
                                 :
v.                           :   Case No.: 1:06CV01856
                               :   Judge Rosemary M. Collyer
DAVID HERSKOWITZ, et al ,     :
                               :
      Defendant          :

## ORDER

UPON CONSIDERATION of Defendant's Motion to Dismiss For Lack of Personal Jurisdiction and Improper Venue, Exhibits, Plaintiff's Opposition thereto and the entire record herein, it is this _____ day of _____, 2006, by the United States District Court for the District of Columbia;

ORDERED, that Defendant's Motion to Dismiss For Lack of Personal Jurisdiction and Improper Venue, be and the same hereby is GRANTED.

_____
Judge

Copies to:

Steven M. Nemeroff
Wortman & Nemeroff, PA.,
7700 Old Georgetown Road
Suite 520
Bethesda, Maryland 20814

James M. Loots, Esquire
236 Massachusetts Avenue, NE
Suite 204
Washington, DC 20002

Mr. Philip Banks
405 Glen Arbor Court
King of Prussia, Pennsylvania 19406

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

STEPHEN SCHUTTER        :
                     :
      Plaintiff         :
                     :
v.                      :    Case No.: 1:06CV01856
                     :     Judge Rosemary M. Collyer
DAVID HERSKOWITZ, et al ,    :
                     :
      Defendant       :

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### I. Introduction

This case arises out of a claim brought by Plaintiff Stephen Schutter against Defendants David Herskowitz and Philip Banks seeking $1,600,000 in damages. Plaintiff alleges, inter alia, claims of breach of contract arising out of a written agreement dated December 2, 2005 ("Agreement") for the purchase of a youth hostel ["Business"] and real property ["Property"] both of which are located in Pennsylvania. For reason set forth below, Defendant David Herskowitz respectfully submits that this case must be dismissed because this Court cannot exercise personal jurisdiction over him and venue is not proper in the District of Columbia.

### I. Facts

1. David Herskowitz lives at 579 Christmas Lane, Williston, Vermont 05495 and is a resident of the State of Vermont. See Compl. ¶4. David Herskowitz was served with the Complaint in the State of Vermont. The Agreement was executed by David Herskowitz in the State of Vermont [1]

---

[1]     See Affidavit at ¶ 2 and 3 attached hereto as **Exhibit "A".**

2. The Agreement expressly states it shall be governed by the laws of the State of Pennsylvania.  The Agreement was to be performed in Pennsylvania.  The Property and all Business assets to be sold under the Agreement are both located at #32 South Bank Street, Philadelphia, Pennsylvania . David Herskowitz did not perform any part of the Agreement in the District of Columbia. [2]

3.  David Herskowitz does not transact business in the District of Columbia. He did not contract to supply services in the District of Columbia. He does not conduct or solicit business, engage in any other persistent course of conduct, or derive revenue from goods used or consumed, or services rendered, in the District of Columbia.   He does not own any property in the District of Columbia. [3]

4.  David Herskowitz has never been to the District of Columbia regarding this Agreement.  He has never been to the District of Columbia for any reason in more than 4 years. [4]

### III.  Argument

### A.  This Court Has No Personal Jurisdiction over David Herskowitz

In order to meet its burden to establish personal jurisdiction under the "transacting business" clause of the District of Columbia's long-arm statute, Plaintiff must demonstrate that (1). this Defendant transacted business in the District of Columbia; (2). this claim arose from the business transacted in District of Columbia; (3). this Defendant had the requisite minimum contacts within the District of Columbia and (4) the court's exercise of personal jurisdiction would not offend

---

[2]      See Agreement attached hereto as **Exhibit "B".**  See Affidavit ¶ 3 and 4.

[3]      See Affidavit ¶ 5.

traditional notions of fair play and substantial justice. D.C.Code §13-423(a)(1). Formica v. Cascade Candle Co. 125 F.Supp.2d 552 (D.DC. 2001); AGS Intern. Services S.A. v. Newmont USA Ltd., 346 F.Supp.2d 64 (D.D.C 2004); Gowens v. Dyncorp, 132 F.Supp.2d 38 (D.DC. 2001); Jung v. Association of American Medical Colleges, 300 F.Supp.2d 119 (D.DC 2004).

Under the threshold due process requirements, the defendant must "have certain minimum contacts with [the forum jurisdiction] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." Holder v. Haarmann & Reimer Corp., 779 A.2d 264, 269 (DC. Cir. 2001) citing International Shoe v. Washington, 326 U.S. at 316, 66 S.Ct. 154 (1945). If the nonresident defendant's business contacts are "sufficiently continuous and systematic" within the forum jurisdiction, then the court may exercise jurisdiction. However, if the business contacts within the forum jurisdiction are not "sufficiently continuous and systematic", then it may not. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780-81, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); Int'l Shoe, supra, 326 U.S. at 316, 66 S.Ct. 154.

The burden is on the Plaintiff to establish that this Court has personal jurisdiction over David Herskowitz and he must allege specific facts upon which personal jurisdiction may be based. Blumenthal v. Drudge, 992 F.Supp. 44, 53 (D.D.C.1998). The Plaintiff must do so by proving specific nonconclusory facts linking a defendant with the forum. Holder v. Haarmann & Reimer Corp. 779 A.2d at 269. Johnson-Tanner v. First Cash Financial Services, Inc., 239 F.Supp.2d 34 (D.DC 2003); Manifold v. Wolf Coach, Inc., 231 F.Supp.2d 58 (D.DC 2002). Bare

---

4       See Affidavit ¶ 6.

allegations or conclusory statements alone are insufficient. Freiman v. Lazur, 925 F.Supp. 14 (D.DC 1996).

The court may consider documents outside the pleadings to assure itself that it has jurisdiction over the defendant. See AGS Intern. Services S.A. v. Newmont USA Ltd. 346 F.Supp.2d 64, 73 (D. DC. 1988) citing Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) ("when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion ... the court may inquire by affidavits or otherwise, into the facts as they exist."); Haase v. Sessions, 835 F.2d 902, 906 (D.C.Cir.1987); Artis v. Greenspan, 223 F.Supp.2d 149, 154 (D.D.C.2002).

Applying the controlling law to the facts *sub judice*, it is undisputed that David Herskowitz is a resident of the State of Vermont and he was served with the Complaint in the State of Vermont. The claim does not arise from business he transacted in the District of Columbia. To the contrary, pursuant to the Agreement, the claim arises out of Property and Business assets located solely in Pennsylvania. The Agreement was to be performed in Pennsylvania. The alleged breach occurred Pennsylvania. The Agreement expressly states it shall be governed by the laws of the State of Pennsylvania. The Agreement was executed by David Herskowitz in Vermont. He did not perform any part of the Agreement in the District of Columbia.

Finally, David Herskowitz does not transact business in the District of Columbia. He did not contract to supply services in the District of Columbia. He does not conduct or solicit business, engage in any other persistent course of conduct, or derive revenue from goods used or consumed, or services rendered, in the District

of Columbia.  David Herskowitz has never been to the District of Columbia regarding this Agreement and has never been to the District of Columbia for any reason in more than 4 years.

As the Formica court further reasoned, it is unreasonable for David Herskowitz "to be haled into a District of Columbia court" with respect to a claim which arises out of the sale of Property and Business assets located in Pennsylvania, under an Agreement entered into in Pennsylvania, to be performed in Pennsylvania, where the defendant has never been to the District of Columbia.  In light of the foregoing, there is no basis to exercise of personal jurisdiction over Defendant David Herskowitz in this case and, therefore, the Complaint against him must be dismissed.

### B. Venue is Improper

According to the Complaint. subject matter jurisdiction is based on diversity. Venue is premised upon 28 USCA § 1391(a) which states as follows:

> "(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought".

Under § 1391(a)(2), a plaintiff may bring a diversity action in "a judicial district in which **a substantial part of the events or omissions giving rise to the claim occurred**." 28 U.S.C. § 1391(a)(2).   Abramoff v. Shake Consulting, L.L.C., 288 F.Supp.2d 1, 3 (D.DC. 2003) (emphasis added) citing Buchanan v. Manley, 145

F.3d 386, 389 (D.C.Cir.1998).  Under § 1391(a)(2), the Courts permit venue only in the districts in which "the events or omissions supporting a claim [are] substantial." Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir.1994).  Thus, only locations hosting a "substantial part" of the events that "directly" give rise to a claim are relevant.  Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir.2003).  Moreover, because the venue statute protects the defendant, "courts often focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred".  Abramoff, 288 F.Supp.2d at 3.

Applying the controlling law to the facts *sub judice*, venue is not proper in the District of Columbia.  David Herskowitz is not a resident of the District of Columbia. He does not own any property or operate any business in the District of Columbia. A substantial part of the events or omissions giving rise to the plaintiff's claims did not occur in the District of Columbia. 28 U.S.C. § 1391(a)(2).  To the contrary, none of relevant activities of this defendant occurred in the District of Columbia. David Herskowitz never went to the District of Columbia.  He did not perform any part of the Agreement in the District of Columbia. The Agreement was executed by David Herskowitz in Vermont.  The Property and all Business assets are located solely in Pennsylvania. The Agreement was to be performed in Pennsylvania. The alleged breach occurred Pennsylvania.

Accordingly, Defendant David Herskowitz respectfully submits that venue is not proper in the District of Columbia and this case must be dismissed.

## Conclusion

For all the reasons stated, Defendant David Herskowitz respectfully requests that his Motion to Dismiss For Lack of Personal Jurisdiction and Improper Venue be granted.

Respectfully submitted,
WORTMAN & NEMEROFF, P.A.

_____/s/_____
Steven M. Nemeroff Bar #416861
Attorney for Defendant
7700 Old Georgetown Road
Suite 520
Bethesda, Maryland 20814
(301) 986-5200

F:\WP_FILES\CLIENTS\Herskowitz.David\MotiontoDismissPersonalJurisidction.doc

**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

STEPHEN SCHUTTER                    :

    Plaintiff                    :
                                    :
v.                                  :    Case No.: 1:06CV01856
                                    :    Judge Rosemary M. Collyer
DAVID HERSKOWITZ, et al ,           :
                                    :
    Defendant                    :

<u>**AFFIDAVIT**</u>

I, David Herskowitz, am over 18 years of age and am competent to testify to the matters contained herein and have personal knowledge of the facts contained herein**.**

1. The parties executed a written agreement dated December 2, 2005 ("Agreement") for the purchase of a hotel ["Business"] and real property ["Property"]. <u>See</u> Exhibit "A" attached hereto and made a part hereof.  The Agreement contains a broad arbitration clause expressly requiring arbitration of "any dispute between" us. <u>See</u> Agreement ¶29.

2. I live at 579 Christmas Lane, Williston, Vermont 05495 and am a resident of the State of Vermont.  I was served with the Complaint in the State of Vermont.

3. I executed the Agreement in Pennsylvania. The Agreement expressly states it shall be governed by the laws of the State of Pennsylvania.

4. The Property and all Business assets to be sold under the Agreement are both located at #32 South Bank Street, Philadelphia, Pennsylvania.  The Agreement was to be performed in Pennsylvania.  I did not perform any part of the Agreement in the District of Columbia.

5.  I do not transact business in the District of Columbia. I did not contract to supply services in the District of Columbia. I do not conduct or solicit any business, engage in any other persistent course of conduct, or derive revenue from goods used or consumed, or services rendered, in the District of Columbia.  I do not own any property in the District of Columbia.

6.  I have never been to the District of Columbia regarding this Agreement.  I have never been to the District of Columbia for any reason in more than 4 years.

I swear and affirm under the penalties of perjury that the foregoing statements are true and correct to the best of my personal knowledge and belief.

David Herskowitz

_____
Witness

_____
Date

F:\WP_FILES\CLIENTS\Herskowitz.David\AFfidavit.doc

EXHIBIT "B"

December 2, 2005,
Philip Banks Real Estate
405 Glen Arbor Court
King of Prussia, PA 19406
(202) 399-.7073
E-M banksrealestate@comca st.net Fox:
610-337-1011

# Agreement of Sale 32 Bank St.
# Philadelphia, Pa.

This Agreement dated December 2, 2005 is between David Herskowitz, 579 Christmas Lane, Williston, Vermont, 05495 and Buyer: Stephen

Schutter, 2451 Eighteenth Street, Washington, DC 20009.

2 PROPERTY

Seller hereby agrees to sell and convey to Buyer, who hereby agrees, to purchase .—      ed "Buyer."

ALL THAT CERTAIN lot or piece of ground with buildings; and improvements thereon erected, 32 So. Bank Street, Philadelphia, PA

# 32 - 42
33      Commonwealth .of Pennsylvania,, Zip-Code

Identification '(e.g., 'Tax ID #; Parcel #; Lot, Block; Deed, Book, Page,. Recording Date)

which wit ..paid. to 'SeWr,h yB ,t..!y,er,.as P O T

3. TERMS (I 0 - 0)·

(A) purchase Price . n e·          One Million Six Hundred Thousand  $1,600,000.00          . U.S. Dollars

(1) 'Cash or check at signing this Agreement::.

(2) Cash or check within  six.  days of the execution of *this Agreement:*          90 , 0 Q.P $

(3)          e.of settlement:

(13) Deposits paid on account of purchase price to be held -by Broker for     y..

(5) Cash, cashier's or,

certified . .-.”

(C)  Seller's written approval on or before:     er   14 ;.  2 0 D

(D) Settlement to be r,     within thirts·7·da'vS after f ·na'l financi,ns ¬ppfova.L·"- .

(E) Conveyance from Seller will be by fee.simple deed of special warranty unless otherwise stated here:

..;

(F) Payment of transfer taxes will be.4iyi4ed cvOlY·P·FtwPen Buyer  e     otherwise stated h
. ..

(G) At lime of ,settlemeAty.,the fOlPwifig .wilt 1z--.40joAPd.pro-ritta 4:.daily. basis between .Duy.er a,ud p,11er, reimbursing where applicable: taxes (see Notices and Information Regarding Tax Proration); rents; int*reSt on mortgage assumptions; condominium fees, if any; water and/or sewer fees, if any; together with any other lienable municipal service. The charges are to be pro-rated for the period(s) covered:

Seller will pay up to and.includingitheldaw',of-set          ent;'uyer4l -'-Oa for a1(
                                                              yi':following settlement,
                                                              unless otherwise stated
                                                              here:
                                                              ...,

(H Buyer shall reimburse-Seller· for the actual costs of any remaining 'heaOn ,cooking    Is stored on the Property at the time of .

settleinent unless otherwise stated bete _____ . .,

**This Agreement, dated** _____    '. "J_____ S_____ is between

**SELLER(S):** _____ David Herskowitz,  _____ 2
          579 Christmas Lane, Willistom, vermont,05495    is hetween  3
                                                          , called "Seller,"

BUYER(S):        S ephen Schutter
                245                    ...,

D66eitilar .2; )2005--

4.

## FIXTURES & PERSONAL PROPERTY  1 0 0

(A) TNCLUt F. .in.this sale ▸ dp1uchase' price are all exitug itcs p e e n t y instlle i the Property, free of liens, including

HV equipment,. lighting fixtures (including chande) plumbing;

Also included: any and all vendi'q machines on __ remises (see addendum light)

(B) LEASED items: all _____ existing telephone lines and numbers .t o be kept in service: existing internet listing (web site) www,Bank Street Hostel.

ox f'a.ri y vat i=a-fz t ,t h.er.Qf _____

## SPECIAL CLAUSES:

(A)  The following are part of this Agreement if checked:

(B)  SPECIAL PROVISIONS (IF ANY):

## POSSESSION (5-01)

(A )  Possession is to be delivered by deed, keys and:

   1.   Physical possession to vacant Property free of debris, with all structures broom clean, at day and time of settlement UNLESS other-wise stated here: _____ , AND/OR

   2.   Assignment of existing lease(s), together with any security deposits and interest, at time of settlement, if Property is leased at the exe-cution of this Agreement or unless otherwise specified here: __ 32 Bank Street is an existing _____ rooming house(hostel),seller represents that there are no long uses __

Buyer will acknowledge existing lease(s) by initialing said lease(s) at time of signing this Agreement if Property is leased.

ten consent of the Buyer.

8.   ## DATES/TIME IS OF THE ESSENCE (5-01)

(A)  The said date for settlement and all other dates and times referred to for the performance of any of the obligations of this Agreement are hereby agreed to be of the essence of this Agreement.

(B)  For the purposes of this Agreement, number of days will be counted from the date of execution, by excluding the day this Agreement was executed and including the last day of the time period.

(C)  The date of settlement is not extended by any other provision of this Agreement and may only be extended by written agreement of the parties. FINANCING CONTINGENCY (5-01)

   WAIVED. This sale is NOT contingent on financing.

☐ ELECTED

(A) This sale is contingent upon Buyer obtaining financing as follows: _____

   1. Amount of loan $ 1, 12 0 , 0 0 0 , __

     Minimum Term _____ years

   3.   Type of loan_____ S • B. S.B.A. or conventional

   4.   Buyer agrees to accept the interest rate as may be committed by the lender, not to exceed a maximum interest rate of _____ %.

(B) Within 10 days of the execution of this Agreement, Buyer will make a completed, written application to a responsible lender according to the terms above. The Broker for Buyer, if any, otherwise the Broker for Seller, is authorized to communicate with the lender for the purposes of assisting in the loan process.

(C) 1. Upon receipt of a financing commitment, Buyer will promptly deliver a copy of the commi ent Se e

   2. Financing commitment date ____ M arch 14, _____ 2005 _____ ≥ (O ʰⁱ] _____ ti. _____ . Unless otherwise agreed to in writing by Buyer and Seller, if a written c mitment is not received by Seller by the above date, all deposit monies paid on account of purchase price will be returned promptly to Buyer and this Agreement will be VOID. Buyer will be responsible for any premiums for mechanics lien insurance and/or title search, or fee for cancellation of same, if any; AND/OR any premiums for flood insurance and/or fire insurance with extended coverage, insurance binder charges or cancellation fee, if any; AND/OR any appraisal fees and charges paid in advance to lender.

## ZONING CLASSIFICATION (5-01)

Failure of this Agreement to contain the zoning classification (except in cases where the property { and each parcel thereof, if subdividable } is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at the option of the Buyer, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

Zoning Classification: _E n a m i n g House C—2 _____

## 10. ZONING CONTINGENCY (5-01)

0 WAIVED

0 ELECTED. Within f_____ i v e days of the execution of this Agreement by all parties,'! A : I1i verify that the proposed use of the Property as <u>Rooming  H o u s e</u>_____ is permitted. In the event the proposed use is not permitted, Buyer will, within the time given for verification, notify Seller in writing that the proposed use of the Property is not permitted and Buyer will (check only one):

0 Option 1. Within the time for verifying the zoning classification, notify Seller, in writing, of Buyer's decision to proceed with the purchase of the Property or terminate the Agreement. Should Buyer elect to terminate the Agreement all deposit monies paid on account of purchase price will be returned promptly to Buyer and this Agreement will be VOID. Failure of Buyer to provide written notice of Buyer's decision will constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 25 of this Agreement.

O Option 2. Make application for approval (or variance/non-conforming use/conditional use/special exception) from_____
_____(municipality) to use the Property as

(proposed use).

(A) Such application will be made on or before_____

(B) Buyer will pay for applications, legal fees, engineering and any other cost associated with obtaining approval.

(C) If the municipality requires the application to be signed by the current owner, Seller agrees to do so.

(D) If a final, unappealable approval is not obtained by _____ all deposit monies paid on account of purchase price will be returned promptly to Buyer and this Agreement will be VOID. 11.

## STATUS OF WATER (5-01)

Sell represents that Property is served by: ublic water

0 On-site water

0 Community Water

O  None

O _____

Seller further warrants that the system(s) is/are fully paid for as of the execution date of this Agreement.

## 12. STATUS OF SEWER (5-01)

p F   represents that Property is served by:

ublic Sewer

0 Community Sewage Disposal System

0 Off-Property Sewage Disposal System

0 Individual On-Lot Sewage Disposal System (See Sewage Notice 1)

0 Individual On-Lot Sewage Disposal System in Proximity to Well (See Sewage Notice 1; see Sewage Notice 4, applicable)

0 Ten-acre Permit Exemption (See Sewage Notice 2)

0 Holding Tank (See Sewage Notice 3)

0 None (See Sewage Notice 1)

0 None Available (See Sewage Notice 5 or Sewage Notice 6, as applicable)

0 _____

Seller further warrants that the system(s) is/are fully paid for as of the execution date of this Agreement.

## PROPERTY DEFECTS DISCLOSURE (10-01)

(A) Seller represents and warrants that Seller has no knowledge -except,as noted in this Agreement that: (1) The premises have been contaminated by any substance in any manner which requires remediation; (2) The Property contains wetlands, flood plains, or any other environmentally sensitive areas, development of which is limited or precluded by law; (3) The Property contains asbestos, polychlorinated biphenyls, lead-based paint or any other substance, the removal or disposal of which. is subject to any law or regulation; and *(4) Any law has* been violated in the handling or disposing of any material or waste or the discharge of any material into the soil, air, surface water, or ground water.

(B) Seller and Buyer acknowledge that any Broker identified in this Agreement: (I) Is a licensed real estate broker; (2) Is not an expert in construction, engineering, or environmental matters; and (3) Has not made and will not make any representations or warranties nor conduct investigations of the environmental condition or suitability of the Property or any adjacent property, including but not limited to those conditions listed in paragraph 13(A).

(C) Seller agrees to indemnify and to hold Broker harmless from and against all claims, demands, or liabilities, including attorneys fees and court costs, which arise from or are related to the environmental condition or suitability of the Property prior to, during, or after Seller's occupation of the Property including without limitation any condition listed in paragraph 13(A).

(D) The provisions of this Section will survive the performance of this Agreement.

(A) Seller represents as to Seller's execution of this Agreement that no public improvement, condominium or owner association assessments have been made against the Property which remain unpaid and that no notice by any government or public authority has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances which remain uncorrected, and that Seller knows of no condition that would constitute violation of any such ordinances which remains uncorrected, unless otherwise specified here:

_____

(B) Seller knows of no other potential notices (including violations) and assessments except as follows:  _____

_____

(C) Any notice of improvements or assessments received on or before the date of Seller's acceptance of this Agreement, unless improvements consist of sewer or water lines not in use, shall be the responsibility of the Seller; any notices received thereafter shall be the responsibility of the Buyer.

(D) If required by law, Seller will deliver to Buyer, on or before settlement, a certification from the appropriate municipal department or departments disclosing notice of any uncorrected violation of zoning, building, safety, or fire ordinances.

(E) Buyer is advised that access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

## 15. TITLE AND COSTS (1-00)

(A) The Property is to be conveyed free and clear of all liens, encumbrances, and easements; EXCEPTING HOWEVER the following: existing deed restrictions, historic preservation restrictions or ordinances, building restrictions, ordinances, easements of roads, easements visible upon the ground, easements of record, privileges or rights of public service companies, land use restrictions pursuant to property enrollment in a preferential tax program if any; otherwise the title to the above described real estate will be good and marketable and such as will be insured by a reputable Title Insurance Company at the regular rates.

(B) In the event Seller is unable to give a good and marketable title and such as will be insured by a reputable Title Insurance Company at the regular rates, as specified in paragraph 15(A), Buyer will have the option of: (1) Taking such title as Seller can give, with no change to the selling price; or (2) Being repaid all monies paid by Buyer to Seller on account of purchase price and being reimbursed by Seller for any costs incurred by Buyer for those items specified in paragraph 15(C) and in paragraph I5(D) items (1), (2), (3), in which case there will be no further liability or obligation on either of the parties hereto and this Agreement will become VOID.

(C) Any survey or surveys which may be required by the Title Insurance Company or the abstracting attorney, for the preparation of an adequate legal description, surveys desired by Buyer or required by the mortgage lender will be secured and paid for by Buyer.

(D) Buyer will pay for the following: (I) Title search, title insurance and/or mechanics lien insurance or fee for cancellation of same, if any; (2) Flood insurance, fire insurance with extended coverage, mine subsidence insurance, and cancellation fees, if any; (3) Appraisal fees and charges paid in advance to mortgage lender, if any; (4) Buyer's customary settlement costs and accruals.

## 16. CO L NOTICE

NOT APPLICABLE

O A P P L I C A B L E . THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

## 17. T₀A DEFERRED EXCHANGE (10-01)

NOT APPLICABLE

APPLICABLE. In the event Seller wishes to enter into a tax deferred exchange for the Property pursuant to Section 1031 of the Internal Revenue Code, Buyer agrees to cooperate with Seller in connection with such exchange, including the execution of such documents as may be reasonably necessary to conduct the exchange, provided that there shall be no delay in the agreed-to settlement date, and that any additional costs associated with the exchange are paid solely by Seller. Buyer is aware that Seller anticipates assigning its interest in this Agreement to a third party under an Exchange Agreement and does hereby consent to such assignment. Buyer shall not be required to exe- cute any note, contract, deed or other document providing any liability which would survive the exchange, nor shall Buyer be obligated to take title to any property other than the Property described in this Agreement. Seller shall indemnify and hold harmless Buyer against any liability which arises or is claimed to have arisen from any aspect of the exchange transaction.

## 18. CO ERCIAL CONDOMINIUM (10-01)

NOT APPLICABLE

0 APPLICABLE. Buyer acknowledges that the condominium unit to lte transferred by the terms of this Agreement is intended for nonresidential use, and that Buyer may agree to modify or waive the applicability of certain provisions of the Uniform Condominium Act of

214 19. RECORDING (5-01) This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public 214

215    record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a breach of this Agreement. 215

216 20. ASSIGNMENT (3-85) This Agreement will be binding upon the parties, their respective heirs, personal representatives, guardians and suc- 216

217    cessors, and, to the extent assignable, on the assigns of the parties hereto. It is expressly understood, however, that the Buyer will not transfer or 217

218    assign this Agreement without the written consent of the Seller.

218

219222 **21. DEPOSIT AND RECOVERY FUND (1-00)**

-223    (A) Deposits paid by Buyer within 30 days of settlement will be by cash,. cashier's or certified check. Deposits, regardless of the form of 223

224    payment and the person designated as payee, will be paid in U.S. Dollars to Broker or party identified in paragraph 3(B), who will retain

225    them in an escrow account until consummation or termination of this Agreement in conformity with all applicable laws and regulations. 22

226    Any uncashed check tendered as deposit may be held pending the acceptance of this offer.    22²

227    (B) In the event of a dispute over entitlement to deposit monies, a broker holding the deposit is required by the Rules and Regulations of the

228    State Real Estate Commission (49 Pa. Code §35.327) to retain the monies in escrow until the dispute is resolved. In the event of litiga-

229    tion for the return of deposit monies, a broker will distribute the monies as directed by a final order of court or the written agreement of

230    the parties. Buyer and Seller agree that, in the event. any broker or affiliated licensee is joined in litigation for the return of deposit

231    monies, the attorneys fees and costs of the broker(s) and licensee(s) will be paid by the party joining them.

232    (C) A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate

232    licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after

234    exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658, or (800) 822-2113 (within    34

23E    Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

236 **22. MAINTENANCE AND RISK OF LOSS (5-01)**    2. 1a

237    (A) Seller will maintain the Property, and any personal property specified herein, in its present condition, normal wear and tear excepted.

238    (B) Seller will promptly notify the Buyer if, at any time prior to the time of settlement, all or any portion of the Property is destroyed, or    2; k;

239    damaged as a result of any cause whatsoever.

240    (C) Seller will bear risk of loss from fire or other causes until time of settlement. In the event that damage to any property included in this

241    sale is not repaired or replaced prior to settlement, Buyer will have the option of rescinding this Agreement and receiving all monies    41

2.42    paid on account of or accepting the Property in its then condition together with the proceeds of any insurance recovery obtained by Seller.    : 42

243    Buyer is hereby notified that he/she may insure his/her equitable interest *in this Property* as of the time this Agreement is accepted.

244 **23. CONDEMNATION (5-01)**

245    Seller has no knowledge of any current or pending condemnation or eminent domain proceedings that would affect the Property. If any por-

246    don of the Property should be subject to condemnation or eminent domain proceedings after the signing of this Agreement, Seller shall i m m e - 7   .f;

247    diately advise Buyer, in writing, of such proceedings. Buyer shall have the option to terminate this Agreement by providing written notice to

246    Seller within fifteen (15) days after Buyer learns of the filing of such proceedings, in which case Seller shall return to Buyer all money paid

249    on account of the purchase price by Buyer. Buyer's failure to provide notice of termination within the time stated will constitute a

25o    WAIVER of this contingency and all other terms of this Agreement remain in full force and effect.    237

251 **24. WAIVER OF CONTINGENCIES (1-00)**

252    *In the* event this Agreement is contingent on Buyer's right to inspect and/or repair the Property, Buyer's failure to exercise any of Buyer's

253    options specified in the contingency provision(s) within the time limits will constitute a WAIVER of that contingency and Buyer accepts

254    the Property and agrees to the RELEASE set forth in paragraph 25 of this Agreement.    25i

256 **25, RELEASE** (1-00) Buyer hereby releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOY-

257    EES, and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM, or CORPORATION who may be liable by

258

or through them, from any and all claims, losses or demands, including, but not limited to, personal injuries and property damage and

259    all of the consequences thereof, whether now known or not, which may arise from the presence of termites or other wood-boring insects,    .:53

260    radon, lead-based paint hazards, environmental hazards, any def&ts in the individual on-lot sewage disposal system or deficiencies in    21.1

251    the on-site water service system, or any defects or conditions on the Property. This release will survive settlement. 262

26. **REPRESENTATIONS (5-01)**

233    (^A) Buyer understands that any representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller,

264    Brokers, their licensees, employees, officers, or partners are not a part of this Agreement unless expressly incorporated or stated in this

265    Agreement. It is further understood that this Agreement contains the whole agreement between Seller and Buyer and there are no other

266    terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale.    2₀6

267    Furthermore, this Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

268    (B) It is understood that Buyer has inspected the Property before signing this Agreement (including fixtures and any personal prop-

269    erty specifically scheduled herein), or has waived the right to do so, and has agreed to purchase it in its present condition unless

270    otherwise stated in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not

271    made an independent examination or determination of the structural soundness of the Property, the age or condition of the com-    2;1

272    ponents, environmental conditions, the permitted uses, or of conditions existing in the locale where the Property is situated; nor

273    have they made a mechanical inspection of any of the systems contained therein.

274    (C) Broker(s) may perform services to assist unrepresented parties in complying with the terms of this Agreement.    71

275    (D) The headings, captions, and line numbers in this Agreement are meant only to make it easier to find the paragraphs.

Should Buyer

(A) Fail to make any additional payments as specified in paragraph 3; OR

(D) Furnish false or incomplete information to Seller, Broker for

or , Buyer, or the lender, if any, concerning the Buyer's legal or financial status, or fail to cooperate in the processing of the loan application, which acts would result in the failure to obtain the approval of a loan commitment; OR

(C) Violate or fail to fulfill and perform any other terms or conditions of this Agreement;

then in such case, Seller has the option of retaining all sums paid by Buyer, including the deposit monies, I) on account of purchase price, or 2) as monies to be applied to Seller's damages, or 3) as liquidated damages for such breach, as Seller may elect, unless

otherwise checked below.

Seller is limited to retaining sums paid by Buyer, including deposit monies, as liquidated damages.

If Seller elects to retain all sums paid by Buyer, including deposit monies, as liquidated damages, Buyer and Seller will be released from further liability or obligation and this Agreement will be VOID.

## 28. CERTIFICATION OF NON-FOREIGN INTEREST (10-01)

0 Seller IS a foreign person, foreign corporation, foreign partnership, foreign trust, or foreign estate subject to Section 1445 of the Internal Revenue Code, which provides that a transferee (Buyer) of a U.S. real property interest must withhold tax if the transferor (Seller) is a foreign person.

Seller is NOT a foreign person, foreign corporation, foreign partnership, foreign trust, or a foreign estate as defined by the Internal Revenue Code, or is otherwise not subject to the tax withholding requirements of section 1445 of the Internal Revenue Code. To inform Buyer that the withholding of tax is not required upon the sale/disposition of the Property by Seller, Seller hereby agrees to furnish Buyer, at or before closing, with the following:

0     An affidavit stating, under penalty of perjury, the Seller's U.S. taxpayer identification number and that the Seller is not a foreign person.

A "qualifying statement," as defined by statute, that tax withholding is not required by Buyer.

0     Other:

understands that any documentation provided under t'    rovision may be disc— l to the Internal Revenue Service by Buyer, and that any false statements made therein could result in punishment by fine, imprisonment or both.

## 29 ARBITRATION-OF DISPUTES (1-00): Buyer and Seller agree to arbitrate, any dispute between them that cannot be amicably resolved. Alter written demand for arbitration, by either Buyer or Seller, each party will select a competent and disinterested arbitrator. The two so selected will select a third. If selection of the third arbitrator cannot be agreed upon within 30 days, either party may request that selection be made by a judge of a court of record in the county in which arbitration is pending: Each party will pay its chosen arbitrator, and bear equally expenses for the third and all other expenses of arbitration. Arbitration will be conducted in accordance with the provisions of Pennsylvania Common Law Arbitration 42 Pa. C.S.A. §7341 et, seq. This agreement to arbitrate disputes arising from this Agreement will survive settlement.

## 30. BROKER INDEMNIFICATION (10-01) Buyer and Seller represent that the only Brokers involved in this transaction are Philip Banks Real Estate

and that the transaction has not been brought about through the efforts of anyone other than said Brokers. It is agreed that if any claims for brokerage commissions or fees are ever made against Buyer or Seller hi connection with this transaction, each party shall pay its own legal fees and costs in connection with such claims. It is further agreed that Buyer and Seller agree to indemnify and hold harmless each other and the above-listed Brokers from and against the non-performance of this Agreement by either party, and from any claim of loss or claim for brokerage commissions, including all legal fees and costs, that may be made by any person or entity. This paragraph shall survive settlement.

## 31. GOVERNING LAW (10-01)

This Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania.

## 32. NOTICE BEFORE SIGNING (5-01)

Buyer and Seller acknowledge that Brokers have advised them to consult and retain experts concerning the legal and tax effects of this Agreement and the completion of the sale, as well as the condition-and/or legality of the Property, including, but not limited to, the Property's improvements, equipment, soil,-tenancies, title and environmental aspects. Return by facsimile transmission (FAX) of this Agreement, and all addenda, bearing the signatures of all parties, constitutes acceptance of this Agreement.

## 33. NOTICE

All notice requirements under the provisions of this Agreement or by application of statutory or common law will be addressed to the appropriate party, at the addresses listed below via any means of delivery as mutually agreed upon by the parties and stated here: _____

If to Seller: ___ D a v i d   H e r s k o w i t z
5 7 9   C h r i s t m a s   L a n e ,   W i l l i s t o n , .   V e r m o n t   0 5 4 9 5 _____

With a copy to: _____

If to Buyer: ___ S t e p h e n .   S c h u t t e r
_____ 2451   E i g h t e e n t h

With a copy to: _ P h i l i P   336
S t r e e t ,   W a s h i n g t o n ,   D . C .   2 0 0 0 9 _____

B a n k s ,   4 0

337          Buyer has received the Consumer Notice as adopted by the. State Real Estate Commission at 49 Pa.. Code §35.336.   :3

338     0    Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

339 .   0    Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before
        339

340          signing this Agreement.                                                                                          340

341 Buyer acknowledges receiving a copy of this Agreement-at the time of signing.

342                                                                                              .....

343 WITNESS/ATTEST_____     BUYER _~Stephen Schutter~_____ **DATE**³⁴⁵

344          BUYER(S) NAME __ S t e p h e n   S c h u t t e r                                   _____   344

             Mailing Address      2 4 5 1   E i g h t e e n th S t r e e t, W a s h i n g t o n, D. C. 2 0 0 0 9          ____   345

346          Phone #s                                                                347

348 WITNESS/ATTEST _____     BUYER _____ DATE_____

                                                                                                       3:₄8₀

350 ³⁴⁹  Mailing Address BUYER(S) NAME _____   SS/TI # _____

351     Phone #ts _____ FAX                                                          351

352
                                                                                                       35.₁
353 WITNESS/ATTEST _____     BUYER _____DATE_____  ₃·¹³

354          BUYER(S) NAME _____   SS/TI # _____   35.:i

355          Mailing Address _____

        Y)L'.
356     Phone #s_____ FAX # _____   E-Mail _____

359
357

358     0    Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.   .35

        0    Seller has received a statement of Seller's                  costs before signing this Agreement.
360

361 **VOLUNTARY TRANSFER OF CORPORATE ASSETS (if applicable):** The undersigned acknowledges that he/she is autho-

362 rized by the Board of Directors to sign this Agreement on behalf of the Seller corporation and that this sale does not constitute a

360 WITNESS/ATTEST

363
384

366     sale, lease, or exchange of all or substantially all the property and assets of the corporation, such as would require the authorization or
        consent of the shareholders pursuant to 15 P.S.§1311.

                  _____ SELLER _____          _DATE D

365               _____ ) _____ ,:                        .'

367

        SELLER'S ACCEPTANCE: Seller hereby accepts the above contract this (date) _____

369   SELLER(S) N A H e r s k o w i t z _____                    SS/TI #

370   Mailing Address ___5 7 9 C h r i s t m a s L a n. e, W i l l i s t o n, V e r m o n t, _____ 0 5 4 9 5 _____

371   Phone #s _____ FAX # _____ E-Mail _____
      in

372        /

373 WITNESS/ATTEST _____
                           SELLER _____ DATE_____ 372
                                                                                       373

374   SELLER(S) NAME _____ SS/TI #_____

375   Mailing Address_____

376   Phone #s _____ FAX # _____ E-Mail _____ 37F,
377                                                                                        377

378 WITNESS/ATTEST _____ SELLER _____ DATE_____ 378

379   SELLER(S) NAME _____ SS/T1                             379

380   Mailing Address _____
      38t)

381   Phone #s _____ FAX /S-C _____ E-Mail _____ 381

382                                    A/S-C Page 5 of 5                                 382