IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

STEPHEN SCHUTTER                      :

    Plaintiff                               :
                                            :
v.                                      :   Case No.: 1:06CV01856
                                            :   Judge Rosemary M. Collyer
DAVID HERSKOWITZ, et al ,               :
                                            :
    Defendant                               :

### DEFENDANT'S MOTION TO DISMISS
### AND COMPEL ARBITRATION

Defendant David Herskowitz, by and through his attorneys, Wortman & Nemeroff, P.A., pursuant to Fed.R.Civ.P 12(b), hereby files this Motion to Dismiss and Compel Arbitration, on the grounds that the parties have contractually agreed to binding arbitration and, therefore, the Court has no jurisdiction over the dispute pursuant to D.C.Code § 16-4301. In support thereof, Defendant respectfully refer the honorable court to the Memorandum of Points and Authorities attached hereto and made a part hereof.

WHEREFORE, Defendant David Herskowitz respectfully requests that this Court to dismiss this matter and compel arbitration.

Respectfully submitted,
WORTMAN & NEMEROFF, P.A.
        /s/
_____
Steven M. Nemeroff Bar #416861
Attorney for Defendant
7700 Old Georgetown Road
Suite 520
Bethesda, Maryland 20814
(301) 986-5200

## REQUEST FOR HEARING

Defendant requests a hearing on all issues raised herein.

/s/
<br>
Steven M. Nemeroff

## Exhibits – Affidavits

Defendant's counsel has electronically filed an executed Affidavit as Exhibit "A" and certifies that he has the original executed Affidavit and will retain the original Affidavit in his possession, without alteration.

/s/
<br>
Steven M. Nemeroff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day November 2006, a copy of the foregoing Motion to Dismiss, Memorandum of Points and Authorities, Affidavit, and Order were mailed, postage prepaid, to James M. Loots, Esquire, 236 Massachusetts Avenue, NE, Suite 204, Washington, DC 20002 and Philip Banks, 405 Glen Arbor Court, King of Prussia, Pennsylvania 19406

/s/
<br>
Steven M. Nemeroff

2

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

STEPHEN SCHUTTER            :

      Plaintiff           :
                           :
v.                        :   Case No.: 1:06CV01856
                           :   Judge Rosemary M. Collyer
DAVID HERSKOWITZ, et al ,   :
                           :
      Defendant         :

## ORDER

UPON CONSIDERATION of Defendant's' Motion to Dismiss and Compel Arbitration, and the entire record herein, it is this _____ day of _____, 2006, by the United States District Court for the District of Columbia;

ORDERED, that the Defendant's Motion to Dismiss and Compel Arbitration be and the same hereby is GRANTED; and it is further

ORDERED, that the case be dismissed.

                                       _____
                                       JUDGE

Copies to:

Steven M. Nemeroff, Esquire
Wortman & Nemeroff, P.A.
7700 Old Georgetown Road
Suite 520
Bethesda, Maryland 20814

James M. Loots, Esquire
236 Massachusetts Avenue, NE
Suite 204
Washington, DC 20002

Mr. Philip Banks
405 Glen Arbor Court
King of Prussia, Pennsylvania 19406

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

STEPHEN SCHUTTER                    :

    Plaintiff                           :
                        :
v.                                  :     Case No.: 1:06CV01856
                        :      Judge Rosemary M. Collyer
DAVID HERSKOWITZ, et al ,           :
                        :
    Defendant                           :

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO
## <u>DISMISS AND COMPEL ARBITRATION</u>

### I.  Introduction

This case arises out of a claim brought by Plaintiff Stephen Schutter against Defendants David Herskowitz and Philip Banks seeking $1,600,000 in damages. Plaintiff alleges, <u>inter</u> <u>alia</u>, claims of breach of contract arising out of a written agreement dated December 2, 2005 ("Agreement") for the purchase of a youth hostel ["Business"] and real property ["Property"] both of which are located in Pennsylvania. Defendant David Herskowitz respectfully submits that Plaintiff's claims are without merit and, in many instances, demonstrably untrue.   Nevertheless, the parties contractually agreed to submit this claim to arbitration and, therefore, this Court has no jurisdiction over the matter pursuant to <u>D.C.Code</u> § 16-4301.

### II.  Factual Background To All Allegations

5

1.    Plaintiff alleges that the parties executed a written agreement dated December 2, 2005 ("Agreement") for the purchase of certain assets ["Business"] and real property ["Property"]. <u>See</u> ¶16 and 17 of Complaint.  [1]

2.    Plaintiff failed to mention to the Court that the Agreement on which he relies has an arbitration clause.  The Agreement, at ¶29, expressly states as follows:

> "**<u>Arbitration of Disputes</u>.    Buyer and Seller agree to arbitrate any dispute between them that cannot be amicably resolved**.  After written demand for arbitration by either Buyer or Seller, each party will select a competent disinterested arbitrator. The two so selected will select a third. If selection of the third arbitrator cannot be agreed upon within 30 days, either party may request that selection be made by a judge of a court of record in the county in which the arbitration is pending.  Each party will pay its chosen arbitrator and bear equally the expenses of the third and all other expenses of arbitration.  **Arbitration will be conducted in accordance with the provisions of the Pennsylvania Common Law Arbitration 42 Pa. CSA § 7341 *et. seq.*** This agreement to arbitrate disputes arising from this Agreement will survive settlement*".[E*mphasis added]

3.    Despite the Agreement, Plaintiff nevertheless filed this lawsuit for claims arising out of the Agreement.

---

[1]    <u>See</u> Affidavit attached hereto as **Exhibit "A"** and Agreement attached hereto as **Exhibit "B "**

**Law**

A.  **Plaintiff Executed a Binding Arbitration Agreement**

District of Columbia law is well-established that a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is "**valid, enforceable and irrevocable".** D.C.Code § 16-4301(2005) (emphasis added). Washington Automotive Co. v. 1828 L Street Associates, 906 A.2d 869 [DC 2006] .

D.C.Code § 16-4301 provides as follows:

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This chapter also applies to arbitration agreements between employers and employees or between their respective representatives.'

The Federal Arbitration Act, the D.C. Code § 16-4301 and federal case law all recognize a presumption in favor of resolution of disputes through arbitration when an agreement to arbitrate exists. Motor City Drive, L.L.C. v. Brennan Beer Gorman Monk Architects and Interiors, P.L.L.C. 890 A.2d 233 (DC 2006) citing Lopata v. Coyne, 735 A.2d 931, 940 (D.C.1999);  Avue Technologies Corp. v. DCI Group, L.L.C. 2006 WL 1147662, *4 (D.D.C. 2006)

Where parties utilize broad all encompassing language in arbitration clauses, as here, it is presumed that they intended all such matters to be arbitrated. D.C.Code § 16-4301 does not limit the matters that may be subject to arbitration, referring broadly to agreements to arbitrate "any existing controversy" or "any controversy thereafter arising," so long as it is in writing.  In determining the scope of

7

the arbitration clause, the Court must resolve all doubts concerning the scope of the issues in favor of arbitration.  <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); <u>Weatherly Cellaphonics Partners v. Hueber,</u> 726 F.Supp. 319, 322 (D.D.C.1989)

Applying the controlling law to the undisputed fact *sub judice*, there is no dispute that the parties executed a valid and binding Agreement.  It contains a broad arbitration clause expressly requiring arbitration of "**any dispute between them**".  <u>See</u> Agreement ¶29 (emphasis added). <u>See</u> <u>e.g.</u>, <u>Saul Subsidiary II Ltd. P'ship v.</u> <u>Venator Group Specialty, Inc.</u>, 830 A.2d 854, 861 (D.C.2003); <u>Capital City Mortg. Corp. v. Habana Vill. Art & Folklore, Inc.</u>, 747 A.2d 564, 567 (D.C.2000). The Agreement further provides the parties with the means, terms and process for conducting the arbitration.  Thus, the plain language of the Agreement indicates exactly what the arbitration act describes:  an agreement to submit any "controversies thereafter arising" between them to binding arbitration in accordance with the Pennsylvania Common Law Arbitration Act [42 Pa. CSA § 7341] Therefore, paragraph 29 of the parties' Agreement is an "arbitration agreement" within the meaning of <u>D.C.Code</u> § 16-4301.

B. **Court Must Order Arbitration**

DC Code § 16-4302(a) also provides the mechanism for a party to enforce an arbitration provision in an agreement and states as follows:

> "On application of a party showing an agreement described in section 16- 4301, and the opposing party's refusal to arbitrate, the Court **shall** order the parties to proceed with arbitration, but if opposing party denies the existence of the agreement to arbitrate, the Court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied."

Thus, once a motion to compel arbitration is filed, the function of the court is limited to a single issue: "Does an arbitration agreement exist?" If the court determines that an arbitration clause exists, then it shall order arbitration and it must dismiss the case. DC Code § 16-4302(a). Weatherly Cellaphonics Partners v. Hueber, 726 F.Supp. 319, 322 (D.D.C.1989); National R.R. Passenger Corp. v. Boston & Maine Corp., 850 F.2d 756, 759 (D.C.Cir.1988)

Since the parties contractually agreed to submit "any disputes between them" to arbitration, this Court has no jurisdiction over the matter pursuant to D.C.Code §16-4301 and the court is required to order the parties to proceed with arbitration and dismiss the case.

## Conclusion

In light of the foregoing, it is respectfully requested that the Defendant's' Motion to Dismiss and Compel Arbitration be granted and attorney's fees be awarded in favor of Defendant.

Respectfully submitted,
WORTMAN & NEMEROFF, P.A.

_____/s/_____
Steven M. Nemeroff Bar #416861
Attorney for Defendant
7700 Old Georgetown Road
Suite 520
Bethesda, Maryland 20814
(301) 986-5200

F:\WP_FILES\CLIENTS\Herskowitz.David\MotiontoDismisArbitration.doc

10

**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

STEPHEN SCHUTTER            :

    Plaintiff                :
                     :
v.                          :    Case No.: 1:06CV01856
                     :    Judge Rosemary M. Collyer
DAVID HERSKOWITZ, et al ,   :
                     :
    Defendant                :

## AFFIDAVIT

I, David Herskowitz, am over 18 years of age and am competent to testify to the matters contained herein and have personal knowledge of the facts contained herein.

1. The parties executed a written agreement dated December 2, 2005 ("Agreement") for the purchase of a hotel ["Business"] and real property ["Property"]. See Exhibit "A" attached hereto and made a part hereof.  The Agreement contains a broad arbitration clause expressly requiring arbitration of "any dispute between" us. See Agreement ¶29.

2. I live at 579 Christmas Lane, Williston, Vermont 05495 and am a resident of the State of Vermont.  I was served with the Complaint in the State of Vermont.

3. I executed the Agreement in Pennsylvania. The Agreement expressly states it shall be governed by the laws of the State of Pennsylvania.

4. The Property and all Business assets to be sold under the Agreement are both located at #32 South Bank Street, Philadelphia, Pennsylvania.  The Agreement was to be performed in Pennsylvania.  I did not perform any part of the Agreement in the District of Columbia.

5.  I do not transact business in the District of Columbia. I did not contract to supply services in the District of Columbia. I do not conduct or solicit any business, engage in any other persistent course of conduct, or derive revenue from goods used or consumed, or services rendered, in the District of Columbia.  I do not own any property in the District of Columbia.

6.  I have never been to the District of Columbia regarding this Agreement.  I have never been to the District of Columbia for any reason in more than 4 years.

I swear and affirm under the penalties of perjury that the foregoing statements are true and correct to the best of my personal knowledge and belief.

David Herskowitz

_____
Witness

_____
Date

F:\WP_FILES\CLIENTS\Herskowitz.David\AFfidavit.doc

EXHIBIT "B"

December 2, 2005,
Philip Banks Real Estate
405 Glen Arbor Court
King of Prussia, PA 19406
(202) 399-.7073
E-M banksrealestate@comca<sup>st.net</sup> Fox:
610-337-1011

# Agreement of Sale 32 Bank St.

# Philadelphia, Pa.

This Agreement dated December 2, 2005 is between David Herskowitz, 579 Christmas Lane, Williston, Vermont, 05495 and Buyer: Stephen

Schutter, 2451 Eighteenth Street, Washington, DC 20009.

2 PROPERTY

Seller hereby agrees to sell and convey to Buyer, who hereby agrees, to purchase . —— ed "Buyer."

ALL THAT CERTAIN lot or piece of ground with buildings; and improvements thereon erected, 32 So. Bank Street, Philadelphia, PA 8

# 32 - 42
33

Commonwealth .of Pennsylvania,, Zip-Code _____

Identification '{e.g., 'Tax ID #; Parcel #; Lot, Block; Deed, Book, Page,. Recording Date) _____'

which wit ..paid. to 'SeWr,h yB ,t..!y,er,.as P O T

3. TERMS (I 0 -0)·

(A) purchase Price . n e·      One Million Six Hundred Thousand  $1,600,000.00      .   U.S. Dollars

(1)  'Cash or check at signing
this Agreement::.      _____

(2)  Cash or check within  six.  days of the execution of *this Agreement:* _____      90 , 0 ·Q.P $

(3)      _____      e.of settlement: _____

(13) Deposits paid on account of purchase price to be held -by Broker for      y..

(5) Cash,
cashier's or,

certified . .-."

(C)  Seller's written approval on or before: _____ er   14 ;  2, 0 D

(D) Settlement to be r,      within thirts·7·da'vS after f ·na'l financi,ns ¬ppfova.L·" - .

(E) Conveyance from Seller will be by fee.simple deed of special warranty unless otherwise
stated here: _____

..,

(F) Payment of transfer taxes will <sup>be</sup>.4iyi4ed cvO<sup>lY</sup>·P·F<sup>twPen</sup> Buyer  e      otherwise stated h
. ..

(G) At lime of ,settlemeAty.,the fOlPwifig .wilt 1z--.40joAPd.pro-ritta 4:.daily. basis between .Duy.er a,ud p,11er, reimbursing where applicable: taxes (see Notices and Information Regarding Tax Proration); rents; int*reSt on mortgage assumptions; condominium fees, if any; water and/or sewer fees, if any; together with any other lienable municipal service. The charges are to be pro-rated for the period(s) covered:

Seller will pay up to and.includingitheldaw',of-set            ent;·'uyer4l -'-Oa for a1( yi':following settlement, unless otherwise stated here:
...,

(H Buyer shall reimburse-Seller· for the actual costs of any remaining 'heaOn ,cooking    Is stored on the Property at the time of .

settleinent unless otherwise stated bete _____ : .,

**This Agreement,** **dated** _____   '· "J      s_____          is between

SELLER(S): _____ , David Herskowitz, _____          2
_____ , 579 Christmas·Lane, Williston, Vermont,05495                is between    3
                                                            , called "Seller,"

BUYER(S):        S ephen Schutter
                  245                    ...,

D66eitilar .2; )2005-

4. FIXTURES & PERSONAL PROPERTY  1 0 0
(A) TNCLUt F. .in.this sale ▸ dp1uchase' price are all exitug itcs p e e n t y instlle i the Property, free of liens, including
HV equipment, .. lighting fixtures (including chande plumbing;
Also included: any and all vendi n'q machines on remises (see addendum Att)

(B) LEASED items: all _____ existing tele p h o n e lines and numbers .t o be kept in
service: existing internet listing(web site) www, Bank Street Hostel.
o x f' a .ri y vat i=a–fz t ,t h er,Qf _____

SPECIAL CLAUSES:

(A) The following are part of this Agreement if checked:

(B) SPECIAL PROVISIONS (IF ANY):

POSSESSION (5-01)
(A ) Possession is to be delivered by deed, keys and:
   1.  Physical possession to vacant Property free of debris, with all structures broom clean, at day and time of settlement UNLESS other-
   wise stated here: _____ , AND/OR
   2.  Assignment of existing lease(s), together with any security deposits and interest, at time of settlement, if Property is leased at the exe-
   cution of this Agreement or unless otherwise specified here: __ 3 2 B a n k Street is an existing _____
   rooming house(hostel),seller represents that there are no long uses
   Buyer will acknowledge existing lease(s) by initialing said lease(s) at time of signing this Agreement if Property is leased.

ten consent of the Buyer.

8. DATES/TIME IS OF THE ESSENCE (5-01)
(A) The said date for settlement and all other dates and times referred to for the performance of any of the obligations of this
   Agreement are hereby agreed to be of the essence of this Agreement.
(B) For the purposes of this Agreement, number of days will be counted from the date of execution, by excluding the day this Agreement
   was executed and including the last day of the time period.
(C) The date of settlement is not extended by any other provision of this Agreement and may only be extended by written agreement of the
   parties. FINANCING CONTINGENCY (5-01)
      WAIVED. This sale is NOT contingent on financing.
   ❏ ELECTED
(A) This sale is contingent upon Buyer obtaining financing as follows: _____
   1. Amount of loan $ 1, 1 2 0 , 0 0 0 . __
      Minimum Term _____ years
   3.  Type of loan_____ S • B. S.B.A. or conventional
   4.  Buyer agrees to accept the interest rate as may be committed by the lender, not to exceed a maximum interest rate of _____ %.
9. (B) Within 10 days of the execution of this Agreement, Buyer will make a completed, written application to a responsible lender according to
   the terms above. The Broker for Buyer, if any, otherwise the Broker for Seller, is authorized to communicate with the lender for the
   purposes of assisting in the loan process.
(C) 1. Upon receipt of a financing commitment, Buyer will promptly deliver a copy of the commi ent Se e
   2. Financing commitment date ____ M arch 14, _____ 2005 _____ ≥ (O h l _____ ti. _____ . Unless
   otherwise agreed to in writing by Buyer and Seller, if a written c mitment is not received by Seller by the above date, all deposit
   monies paid on account of purchase price will be returned promptly to Buyer and this Agreement will be VOID. Buyer will be respon-
   sible for any premiums for mechanics lien insurance and/or title search, or fee for cancellation of same, if any; AND/OR any prem-
   ums for flood insurance and/or fire insurance with extended coverage, insurance binder charges or cancellation fee, if any; AND/OR
   any appraisal fees and charges paid in advance to lender.

ZONING CLASSIFICATION (5-01)
Failure of this Agreement to contain the zoning classification (except in cases where the property { and each parcel thereof, if subdividable }
is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at the option of the Buyer, and, if voided,
any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
Zoning Classification: _E n a m i n g House C—2 _____

10. ZONING CONTINGENCY (5-01)

0 WAIVED

0 ELECTED. Within f_____ i v e days of the execution of this Agreement by all parties,'! A:I1i verify that the proposed use of the Property

as Rooming House _____ is permitted. In the event the proposed use is not permitted, Buyer will, within the time

given for verification, notify Seller in writing that the proposed use of the Property is not permitted and Buyer will (check only one):

0 Option 1. Within the time for verifying the zoning classification, notify Seller, in writing, of Buyer's decision to proceed with the

purchase of the Property or terminate the Agreement. Should Buyer elect to terminate the Agreement all deposit monies paid on

account of purchase price will be returned promptly to Buyer and this Agreement will be VOID. Failure of Buyer to provide writ-

ten notice of Buyer's decision will constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the

RELEASE set forth in paragraph 25 of this Agreement.

O Option 2. Make application for approval (or variance/non-conforming use/conditional use/special exception) from_____

_____(municipality) to use the Property as

(proposed use).

(A) Such application will be made on or before_____

(B) Buyer will pay for applications, legal fees, engineering and any other cost associated with obtaining approval.

(C) If the municipality requires the application to be signed by the current owner, Seller agrees to do so.

(D) If a final, unappealable approval is not obtained by _____ all deposit

monies paid on account of purchase price will be returned promptly to Buyer and this Agreement will be VOID. 11.

STATUS OF WATER (5-01)

Sell represents that Property is served by: ublic water

0 On-site water

0 Community Water

O None

O _____

Seller further warrants that the system(s) is/are fully paid for as of the execution date of this Agreement.

12. STATUS OF SEWER (5-01)

p F  represents that Property is served by:

ublic Sewer

0 Community Sewage Disposal System

0 Off-Property Sewage Disposal System

0 Individual On-Lot Sewage Disposal System (See Sewage Notice 1)

0 Individual On-Lot Sewage Disposal System in Proximity to Well (See Sewage Notice 1; see Sewage Notice 4, applicable)

0 Ten-acre Permit Exemption (See Sewage Notice 2)

0 Holding Tank (See Sewage Notice 3)

0 None (See Sewage Notice 1)

0 None Available (See Sewage Notice 5 or Sewage Notice 6, as applicable)

0 _____

Seller further warrants that the system(s) is/are fully paid for as of the execution date of this Agreement.

PROPERTY DEFECTS DISCLOSURE (10-01)

(A) Seller represents and warrants that Seller has no knowledge -except,as noted in this Agreement that: (1) The premises have been con-
taminated by any substance in any manner which requires remediation; (2) The Property contains wetlands, flood plains, or any other
environmentally sensitive areas, development of which is limited or precluded by law; (3) The Property contains asbestos, polychlorinated
biphenyls, lead-based paint or any other substance, the removal or disposal of which. is subject to any law or regulation; and *(4) Any law
has* been violated in the handling or disposing of any material or waste or the discharge of any material into the soil, air,
surface water, or ground water.

(B) Seller and Buyer acknowledge that any Broker identified in this Agreement: (I) Is a licensed real estate broker; (2) Is not an expert in
construction, engineering, or environmental matters; and (3) Has not made and will not make any representations or warranties nor con-
duct investigations of the environmental condition or suitability of the Property or any adjacent property, including but not limited to
those conditions listed in paragraph 13(A).

(C) Seller agrees to indemnify and to hold Broker harmless from and against all claims, demands, or liabilities, including attorneys fees and
court costs, which arise from or are related to the environmental condition or suitability of the Property prior to, during, or after Seller's
occupation of the Property including without limitation any condition listed in paragraph 13(A).

(D) The provisions of this Section will survive the performance of this Agreement.

(A) Seller represents as of Seller's execution of this Agreement that no public improvement, condominium or owner association assessments have been made against the Property which remain unpaid,and that no notice by any government or public authority has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances which remain uncorrected, and that Seller knows of no condition that would.constitute violation of any such ordinances which remains uncorrected, unless otherwise specified here:

_____

(B) Seller knows of no other potential notices (including violations) and assessments except as follows: _____

_____

(C) Any notice of improvements or assessments received on or before the date of Seller's acceptance of this Agreement, unless improvements consist of sewer or water lines not in use, shall be the responsibility of the Seller; any notices received thereafter shall be the responsibility of the Buyer.

(D) If required by law, Seller will deliver to Buyer, on or before settlement, a certification from the appropriate municipal department or departments disclosing notice of any uncorrected violation of zoning, building, safety, or fire ordinances.

(E) Buyer is advised that access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

## 15. TITLE AND COSTS (1-00)

(A) The Property is to be conveyed free and clear of all liens, encumbrances, and easements; EXCEPTING HOWEVER the following: existing deed restrictions, historic preservation restrictions or ordinances, building restrictions, ordinances, easements of roads, easements visible upon the ground, easements of record, privileges or rights of public service companies, land use restrictions pursuant to property enrollment in a preferential tax program if any; otherwise the title to the above described real estate will be good and marketable and such as will be insured by a reputable Title Insurance Company at the regular rates.

(B) In the event Seller is unable to give a good and marketable title and such as will be insured by a reputable Title Insurance Company at the regular rates, as specified in paragraph 15(A), Buyer will have the option of: (1) Taking such title as Seller can give, with no change to the selling price; or (2) Being repaid all monies paid by Buyer to Seller on account of purchase price and being reimbursed by Seller for any costs incurred by Buyer for those items specified in paragraph 15(C) and in paragraph I5(D) items (1), (2), (3), in which case there will be no further liability or obligation on either of the parties hereto and this Agreement will become VOID.

(C) Any survey or surveys which may be required by the Title Insurance Company or the abstracting attorney, for .the preparation of an adequate description or surveys desired by Buyer or required by the mortgage lender will be secured and paid for by Buyer.

(D) Buyer will pay for the following: (I) Title search, title insurance and/or mechanics lien insurance or fee for cancellation of same, if any; (2) Flood insurance, fire insurance with extended coverage, mine subsidence insurance, and cancellation fees, if any; (3) Appraisal fees and charges paid in advance to mortgage lender, if any; (4) Buyer's customary settlement costs and accruals.

## 16. CO L NOTICE

**NOT APPLICABLE**

O  APPLICABLE.  THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-

NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the eco- nomic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

## 17. TₐA DEFERRED EXCHANGE (10-01)

**NOT APPLICABLE**

APPLICABLE. In the event Seller wishes to enter into a tax deferred exchange for the Property pursuant to Section 1031 of the Internal Revenue Code, Buyer agrees to cooperate with Seller in connection with such exchange, including the execution of such documents as may be reasonably necessary to conduct the exchange, provided that there shall be no delay in the agreed-to settlement date, and that any addi- tional costs associated with the exchange are paid solely by Seller. Buyer is aware that Seller anticipates assigning its interest in this Agreement to a third party under an Exchange Agreement and does hereby consent to such assignment. Buyer shall not be required to exe- cute any note, contract, deed or other document providing any liability which would survive the exchange, nor shall Buyer be obligated to take title to any property other than the Property described in this Agreement. Seller shall indemnify and hold harmless Buyer against any liability which arises or is claimed to have arisen from any aspect of the exchange transaction.

## 18. CO ERCIAL CONDOMINIUM (10-01)

**NOT APPLICABLE**

0 APPLICABLE. Buyer acknowledges that the condominium unit to lte transferred by the terms of this Agreement is intended for nonresi- dential use, and that Buyer may agree to modify or waive the applicability of certain provisions of the Uniform Condominium Act of

213    Pennsylvania Association ...    213

214   19. RECORDING (5-01) This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public   214

215    record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a breach of this Agreement.    215

216   20. ASSIGNMENT (3-85) This Agreement will be binding upon the parties, their respective heirs, personal representatives, guardians and suc-   216

217   cessors, and, to the extent assignable, on the assigns of the parties hereto. It is expressly understood, however, that the Buyer will not transfer or   217

218    assign this Agreement without the written consent of the Seller.

218

219 222   **21. DEPOSIT AND RECOVERY FUND (1-00)**

-223     (A) Deposits paid by Buyer within 30 days of settlement will be by cash,. cashier's or certified check. Deposits, regardless of the form of   223

224    payment and the person designated as payee, will be paid in U.S. Dollars to Broker or party identified in paragraph 3(B), who will retain

225    them in an escrow account until consummation or termination of this Agreement in conformity with all applicable laws and regulations.   22

226    Any uncashed check tendered as deposit may be held pending the acceptance of this offer.   22²

227    (B) In the event of a dispute over entitlement to deposit monies, a broker holding the deposit is required by the Rules and Regulations of the

228    State Real Estate Commission (49 Pa. Code §35.327) to retain the monies in escrow until the dispute is resolved. In the event of litiga-

229     tion for the return of deposit monies, a broker will distribute the monies as directed by a final order of court or the written agreement of

230     the parties. Buyer and Seller agree that, in the event. any broker or affiliated licensee is joined in litigation for the return of deposit

231    monies, the attorneys fees and costs of the broker(s) and licensee(s) will be paid by the party joining them.

232    (C) A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate

232     licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after

234     exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658, or (800) 822-2113 (within   34

23E     Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

236   **22, MAINTENANCE AND RISK OF LOSS (5-01)**      2.1a

237    (A) Seller will maintain the Property, and any personal property specified herein, in its present condition, normal wear and tear excepted.

238     (B) Seller will promptly notify the Buyer if, at any time prior to the time of settlement, all or any portion of the Property is destroyed, or   2:′k;

239    damaged as a result of any cause whatsoever.

240    (C) Seller will bear risk of loss from fire or other causes until time of settlement. In the event that damage to any property included in this

241     sale is not repaired or replaced prior to settlement, Buyer will have the option of rescinding this Agreement and receiving all monies   41

2.42     paid on account of or accepting the Property in its then condition together with the proceeds of any insurance recovery obtained by Seller.   : 42

243    Buyer is hereby notified that he/she may insure his/her equitable interest *in this Property* as of the time this Agreement is accepted.

244   **23. CONDEMNATION (5-01)**

245    Seller has no knowledge of any current or pending condemnation or eminent domain proceedings that would affect the Property. If any por-

246    don of the Property should be subject to condemnation or eminent domain proceedings after the signing of this Agreement, Seller shall i m m e - 7   .f;

247    diately advise Buyer, in writing, of such proceedings. Buyer shall have the option to terminate this Agreement by providing written notice to

246    Seller within fifteen (15) days after Buyer learns of the filing of such proceedings, in which case Seller shall return to Buyer all money paid

249     on account of the purchase price by Buyer. Buyer's failure to provide notice of termination within the time stated will constitute a

25o    WAIVER of this contingency and all other terms of this Agreement remain in full force and effect.    237

251   **24. WAIVER OF CONTINGENCIES (1-00)**

252     *In the* event this Agreement is contingent on Buyer's right to inspect and/or repair the Property, Buyer's failure to exercise any of Buyer's

253    options specified in the contingency provision(s) within the time limits will constitute a WAIVER of that contingency and Buyer accepts

254    the Property and agrees to the RELEASE set forth in paragraph 25 of this Agreement.    25i

256   **25, RELEASE** (1-00) Buyer hereby releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOY-

257    EES, and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM, or CORPORATION who may be liable by

258

   or through them, from any and all claims, losses or demands, including, but not limited to, personal injuries and property damage and

259    all of the consequences thereof, whether now known or not, which may arise from the presence of termites or other wood-boring insects,   .:53

260    radon, lead-based paint hazards, environmental hazards, any def&ts in the individual on-lot sewage disposal system or deficiencies in   21.1

251    the on-site water service system, or any defects or conditions on the Property. This release will survive settlement. 262

**26. REPRESENTATIONS (5-01)**

233     (ᴬ) Buyer understands that any representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller,

264    Brokers, their licensees, employees, officers, or partners are not a part of this Agreement unless expressly incorporated or stated in this

265    Agreement. It is further understood that this Agreement contains the whole agreement between Seller and Buyer and there are no other

266    terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale.   2₀6

267    Furthermore, this Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

268     (B) It is understood that Buyer has inspected the Property before signing this Agreement (including fixtures and any personal prop-

269     erty specifically scheduled herein), or has waived the right to do so, and has agreed to purchase it in its present condition unless

270     otherwise stated in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not

271     made an independent examination or determination of the structural soundness of the Property, the age or condition of the com-   2;1

272     ponents, environmental conditions, the permitted uses, or of conditions existing in the locale where the Property is situated; nor

273     have they made a mechanical inspection of any of the systems contained therein.

274    (C) Broker(s) may perform services to assist unrepresented parties in complying with the terms of this Agreement.    71

275    (D) The headings, captions, and line numbers in this Agreement are meant only to make it easier to find the paragraphs.

Should Buyer

(A) Fail to make any additional payments as specified in paragraph 3; OR

(B) Furnish false or incomplete information to Seller, Broker for

or ,  Buyer, or the lender, if any, concerning the Buyer's legal
or financial status, or fail to cooperate in the processing of the loan application, which acts would result in the failure to obtain the
approval of a loan commitment; OR

(C) Violate or fail to fulfill and perform any other terms or conditions of this Agreement;

then in such case, Seller has the option of retaining all sums paid by Buyer, including the deposit monies, I) on account of purchase
price, or 2) as monies to be applied to Seller's damages, or 3) as liquidated damages for such breach, as Seller may elect, unless
otherwise checked below.

Seller is limited to retaining sums paid by Buyer, including deposit monies, as liquidated damages.

If Seller elects to retain all sums paid by Buyer, including deposit monies, as liquidated damages, Buyer and Seller will be released from
further liability or obligation and this Agreement will be VOID.

28. CERTIFICATION OF NON-FOREIGN INTEREST (10-01)

0 Seller IS a foreign person, foreign corporation, foreign partnership, foreign trust, or foreign estate subject to Section 1445 of the Internal Revenue
Code, which provides that a transferee (Buyer) of a U.S. real property interest must withhold tax if the transferor (Seller) is a foreign person.
Seller is NOT a foreign person, foreign corporation, foreign partnership, foreign trust, or a foreign estate as defined by the Internal Revenue Code, or is
otherwise not subject to the tax withholding requirements of section 1445 of the Internal Revenue Code. To inform Buyer that the withholding of tax
is not required upon the sale/disposition of the Property by Seller, Seller hereby agrees to furnish Buyer, at or before closing, with the following:

0   An affidavit stating, under penalty of perjury, the Seller's U.S. taxpayer identification number and that the Seller is not a foreign
person.
A "qualifying statement," as defined by statute, that tax withholding is not required by Buyer.
0   Other:

understands that any documentation provided under t'     rovision may be disc— l to the Internal Revenue Service by Buyer, and that
any false staterne4o,a ned therein could result in punisilment by fine, imprisonmen or both.

04 05

06 07 00 09 10 11 12

29 ARBITRATION-OF DISPUTES (1-00)'.Buyer and Seller agree to arbitrate, any dispute between them that cannot be amicably resolved. Alter
written demand for arbitration,by either Buyer or Seller, each party will select a competent and disinterested arbitrator. The two so
selected will select a third. If selection of the third arbitrator cannot be agreed upon within 30 days, either party may request that selection be
made by a judge of a court of record in the county in which arbitration is pending: Each party will pay its chosen arbitrator, and bear equally
expenses for the third and all other expenses of arbitration. Arbitration will be conducted in accordance with the provisions of Pennsylvania
Common Law Arbitration 42 Pa. C.S.A. §7341 et, seq. This agreement to arbitrate disputes arising from this Agreement will survive
settlement.

30. BROKER INDEMNIFICATION (10-01) Buyer and Seller represent that the only Brokers involved in this transaction are Philip Banks Real
Estate

and that the transaction has not been brought about through the efforts of anyone other than said Brokers. It is agreed that if any claims for
brokerage commissions or fees are ever made against Buyer or Seller hi connection with this transaction, each party shall pay its own legal
fees and costs in connection with such claims. It is further agreed that Buyer and Seller agree to indemnify and hold harmless each other and
the above-listed Brokers from and against the non-performance of this Agreement by either party, and from any claim of loss or claim for
brokerage commissions, including all legal fees and costs, that may be made by any person or entity. This paragraph shall survive settlement.

31. GOVERNING LAW (10-01)

This Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania.

32. NOTICE BEFORE SIGNING (5-01)

Buyer and Seller acknowledge that Brokers have advised them to consult and retain experts concerning the legal and tax effects of this
Agreement and the completion of the sale, as well as the condition-and/or legality of the Property, including, but not limited to, the Property's
improvements, equipment, soil,-tenancies, title and environmental aspects. Return by facsimile transmission (FAX) of this Agreement, and
all addenda, bearing the signatures of all parties, constitutes acceptance of this Agreement.

33. NOTICE

All notice requirements under the provisions of this Agreement or by application of statutory or common law will be addressed to the appro-
priate party, at the addresses listed below via any means of delivery as mutually agreed upon by the parties and stated here: _____

If to Seller: ___ D a v i d   H e r s k o w i t z
5 7 9   C h r i s t m a s   L a n e ,   W i l l i s t o n , .   V e r m o n t   0 5 4 9 5 _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

With a copy to: _____

If to Buyer: ___ S t e p h e n .   S c h u t t e r
_____2451      E i g h t e e n t h

With a copy to: _ P h i l i P   336

S t r e e t .   W a s h i n g t o n ,   D . C .   2 0 0 0 9

B a n k s ,   4 0

337          Buyer has received the Consumer Notice as adopted by the. State Real Estate Commission at 49 Pa.. Code §35.336. :3

338    0    Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

339 .    0    Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before
       339

340         signing this Agreement.                                                                 340

341 Buyer acknowledges receiving a copy of this Agreement-at the time of signing.

342

343 WITNESS/ATTEST_____ BUYER *Stephen Schutter* **DATE**345

344        BUYER(S) NAME __ S t e p h e n   S c h u t t e r                                344

         Mailing Address      2 4 5 1   E i g h t e e n th  S t r e e t ,  W a s h i n g t o n ,  D . C .  2 0 0 0 9              345

346       Phone #s                                                    347

348 WITNESS/ATTEST _____ BUYER _____ DATE_____ 3.46

                                                                                     3:₄8,

350 ³⁴⁹   Mailing Address BUYER(S) NAME _____ SS/TI # _____

351       Phone #ts _____ FAX                                             351

352                                                                                   35.ł

353 WITNESS/ATTEST _____ BUYER _____ DATE_____ :'ł3

354        BUYER(S) NAME _____ SS/TI # _____ 35,:i

355        Mailing Address _____

      ʸ)ᴸ˙.

356       Phone #s_____ FAX # _____ E-Mail _____

359

357

358    0    Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336. .    .35

360    0    Seller has received a statement of Seller's            costs before signing this Agreement.

361 **VOLUNTARY TRANSFER OF CORPORATE ASSETS (if applicable):** The undersigned acknowledges that he/she is autho-

362 rized by the Board of Directors to sign this Agreement on behalf of the Seller corporation and that this sale does not constitute a

360 WITNESS/ATTEST

363

384

366    sale, lease, or exchange of all or substantially all the property and assets of the corporation, such as would require the authorization or
     consent of the shareholders pursuant to 15 P.S.§1311.

                   _____ SELLER _____          _DATE D

365                     _____ ) _____ ,:

367    **SELLER'S ACCEPTANCE:** Seller hereby accepts the above contract this (date) _____

369    SELLER(S) <u>N A H e r s k o w i t z</u>                                    SS/TI #

370    Mailing Address ___ <u>5 7 9   C h r i s t m a s   Lan.e ,   W i l l i s t o n ,   V e r m o n t ,</u> _____ <u>0 5 4 9 5</u> _____

371    Phone #s _____ FAX # _____ E-Mail _____

       in

372         /

373  WITNESS/ATTEST _____

                                    SELLER _____ DATE_____ 372

                                                                                            373

374    SELLER(S) NAME _____ SS/TI #_____

375    Mailing Address_____

376    Phone #s _____ FAX # _____ E-Mail _____ 37F,

377                                                                                        377

378  WITNESS/ATTEST _____ SELLER _____ DATE_____ 378

379    SELLER(S) NAME_____ SS/T1 _____ 379

38o    Mailing Address _____

       38t)

381    Phone #s_____ FAX /S-C _____ E-Mail _____ 381

382                                        A/S-C Page 5 of 5                                          382