UNITED STATES DISTRICT COURT
District of Columbia

STEPHEN SHUTTER

v.

DAVID HERSKOWITZ and
PHILLIP BANKS

Case Number 1:06cv01846

Judge Rosemary M. Collyer
DECK TYPE: Contract
Date Stamp: 10/27/2006

**MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION
FOR AGREED UPON LIMITATION OF JURISDICTION TO
ARBITRATION IN THE COMMONWEALTH OF PENNSYLVANIA
AND
LACK OF SUBJECT MATTER JURISDICTION**

**TO THE HONORABLE ROSEMARY M. COLLYER,** Judge of the United States Federal District Court for the District of Columbia.

Phillip Banks, pro se, enters this limited appearance for the sole purpose of challenging the Jurisdiction of the Court; for denying the Court has personal jurisdiction and further that the parties hereto have agreed to submit any disputes resulting from the contract to Arbitration under the terms of Pennsylvania Law and more specifically *42 Pa. C.S.A. §7341 et seq.* (Pennsylvania Statute.) In furtherance of the above, the Defendant, Phillip Banks does hereby aver the following:

    1. Phillip Banks is an individual and a licensed Real Estate Broker, licensed to practice his profession within the Commonwealth of Pennsylvania. He resides at and maintains his office at 405 Glen Arbor Court, King of Prussia, Pennsylvania 19406 ( A Philadelphia, Pennsylvania suburb.)

**RECEIVED**

DEC 1 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2. The Plaintiff is Stephen Schutter who purports to resided at 2451 Eighteenth Street, Washington, D.C. 20009.

3. The Defendant, David Herskowitz of 579 Christmas Lane, Williston, Vermont 05495.

4. The suit involves a disagreement related to the sale/purchase of property located in the Commonwealth of Pennsylvania and more specifically, 32 South Bank Street, Philadelphia, Pennsylvania.

5. On December 2, 2005, Stephen Shutter identifying himself as the buyer and David Hershowitz, identifying himself as the seller of the property located at 32 Bank Street, Philadelphia, Pennsylvania executed an "AGREEMENT OF SALE 32 BANK ST. PHILADELPHIA, PENNSYLVANIA". A copy of that Agreement of Sale is attached hereto, made a part hereof and is marked "Exhibit A".

6. There is no diversity when the situs of the transaction is in the Commonwealth of Pennsylvania and the parties, by agreement have surrendered jurisdiction to an Arbitrary Proceeding in the Commonwealth of Pennsylvania.

7. In the Agreement which is attached hereto, (Exhibit A) specifies the locus of the jurisdiction should a dispute arise between the parties. That Agreement, more specifically, Paragraph 29, specifies:

> Paragraph 29: Arbitration of Disputes (1-00) Buyer and Seller agree to arbitrate any dispute between them that cannot be amicably resolved. After written arbitration by either Buyer or Seller, each party will select a competent and disinterested arbitrator. The two so selected will select a third. If the selection of the third arbitrator cannot be agreed upon within 30 days, either party may request that selection be made by a judge of a court of

record in the county in which arbitration is pending. Each party will pay its chosen arbitrator, and bear equally expenses for the third and all other expenses of arbitration. Arbitration will be conducted in accordance with the provisions of Pennsylvania Common Law Arbitration 42 Pa. C.S.A. §7341 *et seq*. This agreement to arbitrate disputes arising form this Agreement will survive settlement.

Further, the parties have agreed which law should govern the disputes. In the following paragraph,

> "Paragraph 31. GOVERNING LAW (10-01)
> This agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania."

Paragraph two of the Complaint filed in This Court avers:

> "Venue is appropriate in this District pursuant to 28 U.S.C. Section 1391 (a) inasmuch as a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia"

8. In the Complaint filed in this case, a series of events beginning after the heading "Factual Allegations", recites a series of events none of which were identified as occurring within the venue of the District of Columbia. Those paragraphs continue on until paragraph 25 which, without reference to any of the prior allegations makes the bare assertion that "Many, if not all, of the documents actions and interactions, statements and false representations relevant to this action were made and /or executed in the District of Columbia."

9. The Defendant, Phillip Banks denies that allegation and to the contrary

asserts all the above occurred either by telephone with the parties in their respective states and further that the agreement was entered into pursuant to the law of the Commonwealth of Pennsylvania. Further, the Agreement imposed upon the buyer the obligation of inspecting the property prior to entering into the Agreement and that the property which was subject to the inspection is located in the City of Philadelphia, in the Commonwealth of Pennsylvania.

10. The Defendant Phillip Banks asserts the averment of paragraph 25 of the Complaint filed in this case is false and he demands proof thereof.

11. The remaining averments contained in the subsequent paragraphs are false for the buyer and seller had negotiated a contract prior to seeking the services of the Defendant, Phillip Banks Realtor who thereupon created the Agreement which is attached. It was created in Pennsylvania and by mail, it was signed and sent to the Defendant in Philadelphia. Thereupon, as requested by the Buyer, the Plaintiff herein, Phillip Banks Realtor undertook to locate and procure the requisite financing as was requested by the Plaintiff. All of the services resulting in procuring the requisite financing occurred in the Commonwealth of Pennsylvania.

12. There were no services nor negotiations which occurred within the District of Columbia.

13. The Responding Defendant therefore denies there is any jurisdictional nexus by and between the District of Columbia and the issues in this case.

14. Further, the Responding Defendant responds pursuant to a limited appearance solely for the purpose of denying venue, jurisdiction and further that the District Court of the District of Columbia has personal jurisdiction over him.

15. The Responding Defendant has not done business within the District of

Columbia with reference to this matter and the law prohibits the Court from exercising jurisdiction over a person who is not subject to in personam jurisdiction.

WHEREFORE, the Responding Defendant does hereby pray the Court enter an Order dismissing the case for failure to procure in personam jurisdiction over the Responding/Defendant, that the Court has no jurisdiction for the parties have waived any diversity by agreeing to arbitrate within the Commonwealth of Pennsylvania and further, that if there was jurisdiction, the venue of the jurisdiction should be in the Federal District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

Phillip Banks, pro se Defendant
2530 N. Providence Road
Upper Providence, Pennsylvania 19063
484 442 8305
Fax 484 442 8306
frankmarcone@comcast.net

November 24, 2006

**UNITED STATES DISTRICT COURT**
**District of Columbia**

STEPHEN SHUTTER

v.

DAVID HERSKOWITZ and
PHILLIP BANKS

Case Number 1:06cv01846

Judge Rosemary M. Collyer
DECK TYPE: Contract
Date Stamp: 10/27/2006

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION
FOR AGREED UPON LIMITATION OF JURISDICTION TO
ARBITRATION IN THE COMMONWEALTH OF PENNSYLVANIA
AND
LACK OF SUBJECT MATTER JURISDICTION**

**INTRODUCTION:**

As more fully described below, the Plaintiff's Complaint should be dismissed as 1) This Court lacks personal jurisdiction over the non-resident Defendants; 2) Plaintiff has filed this diversity jurisdiction suit in an improper venue contrary to the requirements of 28 U.S.C. § 1391(a); 3) the parties had agreed to submit disputes to Arbitration within the Commonwealth of Pennsylvania thereby deliberatly ruling out jurisdiction by any Federal Court

**UNDISPUTED FACTS:**

An Agreement of Sale for a property on Banks Street located in the City of Philadelphia within the Commonwealth of Pennsylvania by and between the Plaintiff who was the buyer and the defendant, David Herskowitz, a Vermont resident, who was the seller. Phillip Banks, the Responding Defendant is a real estate broker who is licensed within the Commonwealth of Pennsylvania.

That Agreement has been attached as Exhibit "A" to the Motion and within said Agreement there are paragraphs which have been cited specifically agreeing that any disputes between the parties to the Agreement would submit the issues resulting therefrom to a three person arbitration subjected to Pennsylvania law and governed by Pennsylvania Statutes.

**ARGUMENT**:

**A.** *Dismissal of the Plaintiff's Complaint is appropriate where the Plaintiff has failed to establish that the Court's jurisdiction is properly exercised over the Defendants.*

*Federal Rule of Civil Procedure 12(b)(2)* provides that an action may be dismissed where, as in this case, the Court lacks personal jurisdiction over the defendant. In order to overcome non-resident Standard's challenge to personal jurisdiction, the Plaintiff must prove that this Court has jurisdiction over the Defendants under both Pennsylvania's long arm statute and the Due Process Clause of the United State's Constitution. *Pennzoil Products Co. v. Colelli & Assocs., 149 F.3d 197, 200 (3rd Cir. 1998), Miller Yacht Sales Inc. v. Smith, 384 F.3d 93 (3rd Cir. 2004).*

If a non resident's contacts with the forum state are "continuous and substantial" tehy may establish a basis for general jurisdiction. *Pennzoil, 149 F.3d at 200.*

Alternatively, where a plaintiff's claim arises from or is related to a defendant's contacts with the forum state, specific personal jurisdiction may exist.

In *Integral Nuclear Associates, LLC v. Nair, 2005 U.s. Dist. Lexis 17528 (E.D. Pa. Aug. 22, 2005)* the court found there was no personal jurisdiction over a maryland defendant in a case involving a plaintiff with its principal offices in Pennsylvania. Integral Nuclear Associates concerned a plaintiff with its principal office in Pennsylvania who agreed to open a location providing nuclear imaging services for a doctor in Maryland and subsequently found the doctor had opened his own competing nuclear imaging facility next door.

The court granted the defendant's motion to dismiss noting that telephone calls and other communications were not sufficient to establish personal jurisdiction as they did not purport to purposefully direct the doctor's activities at Pennsylvania

residents andthe litigation did not result from injuries arising out of or relating to such actions. Upon request by the Plaintiff the Court transferred to action to the District of Maryland.

**B.** *Dismissal of the Plaintiff's Complaint for improper venue is appropriate where Plaintiff has failed to comply with the requirements of 28 U.S.C. §1391(a).*

*Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1406(a)* provide that an action may be dismissed where as here, it is filed in the improper venue. When civil actions are brought in federal court only upon diversity of citizenship, 28 U.S.C. § 1391(a) governs where they may be properly filed. The section provides:

> "(I) a judicial district wehre the defendant resides, if all defendants reside in the same state, (2) a juidicial district in whcih a substantial part of the events or omissions givng rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in whcih the action otherwise be brought."

The filing in the District of Columbia fails to comport with these venue requirements. The Complaint alleges the Defendants reside in the Eastern District of Pennsylvania and in Vermont. None of the Defendants reside in the District of Columbia.

The long arm statute of Pennsylvania does not provide relief and in fact it would only apply to the Responding Defendant, if it applied at all. Further, the primary Defendant admittedly resides in the State of Vermont.

Most important however, (aside from the Agreement requiring jurisdiction and venue be within the Commonwealth of Pennsylvania, is the fact the property is within the Commonwealth of Pennsylvania.

For the above reasons the Plaintiff's Complaint should be dismissed as it has been brought in an improper venue.

**CONCLUSION:**

The parties to this Agreement have resolved the issue of both jurisdiction and venue. The Agreement specifies that any disputes between the parties must submit

any disputes to arbitration within the Commonwealth of Pennsylvania. Further, there is no "diversity" jurisdiction within the District of Columbia since neither of the Defendants may be served and there is no inpersonam jurisdiction, thereby divesting the Court of Jurisdiction to address any of the issues.

The Court is therefore urged to dismiss the Complaint as filed and permit the parties to address any disputes within the Commonwealth of Pennsylvania within an Arbitration setting as is agreed upon within the Agreement.

Respectfully submitted,

*/s/ Phillip Banks*
Phillip Banks, pro se Defendant
2530 N. Providence Road
Upper Providence, Pennsylvania 19063
484 442 8305
frankmarcone@comcast.net

November 24, 2006

December 2, 2005,
Philip Banks Real Estate
405 Glen Arbor Court
King of Prussia, PA  19406
(202) 390-.7073
E-M pjbanksrealestate@comcast.net
Fax:  610-337-1011

# Agreement of Sale 32 Bank St.
# Philadelphia, Pa.

1. **This Agreement**, dated December 2, 2005 _____ is between
   SELLER(S): David Herskowitz,
   579 Christmas Lane, Williston, Vermont, 05495
   _____, called "Seller," and
   BUYER(S): Stephen Schutter
   2451 Eighteenth Street, Washington, D.C. 20009
   _____, called "Buyer."

2. PROPERTY. Seller hereby agrees to sell and convey to Buyer, who hereby agrees to purchase:
   ALL THAT CERTAIN lot or piece of ground with buildings and improvements thereon erected, if any, known as:
   # 32 South Bank Street, Philadelphia, Pa.
   32-42 D.H.
   in the City _____ of Philadelphia   County of Philadelphia, Pa
   Commonwealth of Pennsylvania, Zip Code _____
   Identification (e.g., Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date) _____

3. TERMS (10-01)
   (A) Purchase Price One Million Six Hundred Thousand ($1,600,000.) U.S. Dollars
       which will be paid to Seller by Buyer as follows:
       (1) Cash or check at signing this Agreement: _____ $ 10,000.
       (2) Cash or check within Six days of the execution of this Agreement: _____ $ 90,000
       (3) _____ $ _____
       (4) _____ $ _____
       (5) Cash, cashier's or certified check at time of settlement: _____ $ 1,500,000.
                                                          TOTAL $ 1,600,000.-
   (B) Deposits paid on account of purchase price to be held by Broker for Buyer, in an escrow account at
       Bryn Mawr Trust Co.
   (C) Seller's written approval on or before: December 14, 2005
   (D) Settlement to be    within thirty days after final financing approval
   (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
   (F) Payment of transfer taxes will be divided equally between Buyer and Seller, unless otherwise stated here: _____
   (G) At time of settlement, the following will be adjusted pro-rata on a daily basis between Buyer and Seller, reimbursing where applicable: taxes (see Notices and Information Regarding Tax Proration); rents; interest on mortgage assumptions; condominium fees, if any; water and/or sewer fees, if any; together with any other lienable municipal service. The charges are to be pro-rated for the period(s) covered: Seller will pay up to and including the date of settlement; Buyer will pay for all days following settlement, unless otherwise stated here: _____
   (H) Buyer shall reimburse Seller for the actual costs of any remaining heating, cooking or other fuels stored on the Property at the time of settlement, unless otherwise stated here: _____

4. FIXTURES & PERSONAL PROPERTY (1-00)
   (A) INCLUDED in this sale and purchase price are all existing items permanently installed in the Property, free of liens, including plumbing; HVAC equipment; lighting fixtures (including chandeliers and ceiling fans); and water treatment systems, unless otherwise stated below.
       Also included: any and all vending machines on premises (see addendum) D.H.
   (B) LEASED items: all existing telephonelines and numbers to be kept in
       service: existing internet listing(web site) "www.Bank StreetHostel.
       or any variant therof

5. SPECIAL CLAUSES:
   (A) The following are part of this Agreement if checked:
       ☐ _____     ☐ _____
       ☐ _____     ☐ _____
   (B) SPECIAL PROVISIONS (IF ANY):

Buyer Initials: _____    A/S-C    Page 1 of 5    Seller Initials: D.H.

RECEIVED

DEC 1 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

6. **POSSESSION (5-01)**
   (A) Possession is to be delivered by deed, keys and:
   1. Physical possession to vacant Property free of debris, with all structures broom clean, at day and time of settlement UNLESS otherwise stated here: _____, AND/OR
   2. Assignment of existing lease(s), together with any security deposits and interest, at time of settlement, if Property is leased at the execution of this Agreement or unless otherwise specified here: __32 Bank Street is an existing__ __rooming house(hostel),seller represents that there are no long term leases__
   Buyer will acknowledge existing lease(s) by initialing said lease(s) at time of signing this Agreement if Property is leased.
   (B) Seller will not enter into any new leases, written extension of existing leases, if any, or additional leases for the Property without written consent of the Buyer.

7. **DATES/TIME IS OF THE ESSENCE (5-01)**
   (A) The said date for settlement and all other dates and times referred to for the performance of any of the obligations of this Agreement are hereby agreed to be of the essence of this Agreement.
   (B) For the purposes of this Agreement, number of days will be counted from the date of execution, by excluding the day this Agreement was executed and including the last day of the time period.
   (C) The date of settlement is not extended by any other provision of this Agreement and may only be extended by written agreement of the parties.

8. **FINANCING CONTINGENCY (5-01)**
   ☐ WAIVED. This sale is NOT contingent on financing.
   ☐ ELECTED
   (A) This sale is contingent upon Buyer obtaining financing as follows:
   1. Amount of loan $ __1,120.000.-__
   2. Minimum Term _____ years
   3. Type of loan __S.B.A. or conventional__
   4. Buyer agrees to accept the interest rate as may be committed by the lender, not to exceed a maximum interest rate of _____ %.
   (B) Within 10 days of the execution of this Agreement, Buyer will make a completed, written application to a responsible lender according to the terms above. **The Broker for Buyer, if any, otherwise the Broker for Seller, is authorized to communicate with the lender for the purposes of assisting in the loan process.**
   (C) 1. Upon receipt of a financing commitment, Buyer will promptly deliver a copy of the commitment to Seller.
   2. Financing commitment date __March 14, 2005__ (SEE ADDENDUM) (D.H.) _____. Unless otherwise agreed to in writing by Buyer and Seller, if a written commitment is not received by Seller by the above date, all deposit monies paid on account of purchase price will be returned promptly to Buyer and this Agreement will be VOID. Buyer will be responsible for any premiums for mechanics lien insurance and/or title search, or fee for cancellation of same, if any; AND/OR any premiums for flood insurance and/or fire insurance with extended coverage, insurance binder charges or cancellation fee, if any; AND/OR any appraisal fees and charges paid in advance to lender.

9. **ZONING CLASSIFICATION (5-01)**
   Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at the option of the Buyer, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
   Zoning Classification: __Rooming House C-2__

10. **ZONING CONTINGENCY (5-01)**
    ☐ WAIVED
    ☐ ELECTED. Within __five__ days of the execution of this Agreement by all parties, Buyer will verify that the proposed use of the Property as __Rooming House__ is permitted. In the event the proposed use is not permitted, **Buyer will, within the time given for verification,** notify Seller in writing that the proposed use of the Property is not permitted and Buyer will (check only one):
    ☐ Option 1. Within the time for verifying the zoning classification, notify Seller, in writing, of Buyer's decision to proceed with the purchase of the Property or terminate the Agreement. Should Buyer elect to terminate the Agreement all deposit monies paid on account of purchase price will be returned promptly to Buyer and this Agreement will be VOID. **Failure of Buyer to provide written notice of Buyer's decision will constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 25 of this Agreement.**
    ☐ Option 2. Make application for approval (or variance/non-conforming use/conditional use/special exception) from _____ (municipality) to use the Property as _____ (proposed use).
    (A) Such application will be made on or before _____
    (B) Buyer will pay for applications, legal fees, engineering and any other cost associated with obtaining approval.
    (C) If the municipality requires the application to be signed by the current owner, Seller agrees to do so.
    (D) If a final, unappealable approval is not obtained by _____, all deposit monies paid on account of purchase price will be returned promptly to Buyer and this Agreement will be VOID.

11. **STATUS OF WATER (5-01)**
    Seller represents that Property is served by:
    ☑ Public water
    ☐ On-site water
    ☐ Community Water
    ☐ None
    ☐ _____
    Seller further warrants that the system(s) is/are fully paid for as of the execution date of this Agreement.

12. **STATUS OF SEWER (5-01)**
    Seller represents that Property is served by:
    ☑ Public Sewer
    ☐ Community Sewage Disposal System
    ☐ Off-Property Sewage Disposal System
    ☐ Individual On-Lot Sewage Disposal System (See Sewage Notice 1)
    ☐ Individual On-Lot Sewage Disposal System in Proximity to Well (See Sewage Notice 1; see Sewage Notice 4, if applicable)
    ☐ Ten-acre Permit Exemption (See Sewage Notice 2)
    ☐ Holding Tank (See Sewage Notice 3)
    ☐ None (See Sewage Notice 1)
    ☐ None Available (See Sewage Notice 5 or Sewage Notice 6, as applicable)
    ☐ _____
    Seller further warrants that the system(s) is/are fully paid for as of the execution date of this Agreement.   (D.H.)

13. **PROPERTY DEFECTS DISCLOSURE (10-01)** The parties have agreed:
    (A) Seller represents and warrants that Seller has no knowledge except as noted in this Agreement that: (1) The Property contains wetlands, flood plains, or any other environmentally sensitive areas, development of which is limited or precluded by law; (3) The Property contains asbestos, polychlorinated biphenyls, lead-based paint or any other substance, the removal or disposal of which is subject to any law or regulation; and (4) Any law has been violated in the handling or disposing of any material or waste or the discharge of any material into the soil, air, surface water, or ground water.
    (B) Seller and Buyer acknowledge that any Broker identified in this Agreement: (1) Is a licensed real estate broker; (2) Is not an expert in construction, engineering, or environmental matters; and (3) Has not made and will not make any representations or warranties nor conduct investigations of the environmental condition or suitability of the Property or any adjacent property, including but not limited to those conditions listed in paragraph 13(A).
    (C) Seller agrees to indemnify and to hold Broker harmless from and against all claims, demands, or liabilities, including attorneys fees and court costs, which arise from or are related to the environmental condition or suitability of the Property prior to, during, or after Seller's occupation of the Property including without limitation any condition listed in paragraph 13(A).
    (D) The provisions of this Section will survive the performance of this Agreement.

14. **NOTICES AND ASSESSMENTS (5-01)**
    (A) Seller represents as of Seller's execution of this Agreement, that no public improvement, condominium or owner association assessments have been made against the Property which remain unpaid and that no notice by any government or public authority has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances which remain uncorrected, and that Seller knows of no condition that would constitute violation of any such ordinances which remains uncorrected, unless otherwise specified here: _____
    (B) Seller knows of no other potential notices (including violations) and assessments except as follows: _____
    (C) Any notice of improvements or assessments received on or before the date of Seller's acceptance of this Agreement, unless improvements consist of sewer or water lines not in use, shall be the responsibility of the Seller; any notices received thereafter shall be the responsibility of the Buyer.
    (D) If required by law, Seller will deliver to Buyer, on or before settlement, a certification from the appropriate municipal department or departments disclosing notice of any uncorrected violation of zoning, building, safety, or fire ordinances.
    (E) Buyer is advised that access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

15. **TITLE AND COSTS (1-00)**
    (A) The Property is to be conveyed free and clear of all liens, encumbrances, and easements; EXCEPTING HOWEVER the following: existing deed restrictions, historic preservation restrictions or ordinances, building restrictions, ordinances, easements of roads, easements visible upon the ground, easements of record, privileges or rights of public service companies, land use restrictions pursuant to property enrollment in a preferential tax program if any; otherwise the title to the above described real estate will be good and marketable and such as will be insured by a reputable Title Insurance Company at the regular rates.
    (B) In the event Seller is unable to give a good and marketable title and such as will be insured by a reputable Title Insurance Company at the regular rates, as specified in paragraph 15(A), Buyer will have the option of: (1) Taking such title as Seller can give, with no change to the selling price; or (2) Being repaid all monies paid by Buyer to Seller on account of purchase price and being reimbursed by Seller for any costs incurred by Buyer for those items specified in paragraph 15(C) and in paragraph 15(D) items (1), (2), (3), in which case there will be no further liability or obligation on either of the parties hereto and this Agreement will become VOID.
    (C) Any survey or surveys which may be required by the Title Insurance Company or the abstracting attorney, for the preparation of an adequate legal description of the Property (or the correction thereof), will be secured and paid for by Seller. However, any survey or surveys desired by Buyer or required by the mortgage lender will be secured and paid for by Buyer.
    (D) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics lien insurance or fee for cancellation of same, if any; (2) Flood insurance, fire insurance with extended coverage, mine subsidence insurance, and cancellation fees, if any; (3) Appraisal fees and charges paid in advance to mortgage lender, if any; (4) Buyer's customary settlement costs and accruals.

16. **COAL NOTICE**
    ☒ NOT APPLICABLE
    ☐ APPLICABLE. THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN; AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

17. **TAX DEFERRED EXCHANGE (10-01)**
    ☒ NOT APPLICABLE
    ☐ APPLICABLE. In the event Seller wishes to enter into a tax deferred exchange for the Property pursuant to Section 1031 of the Internal Revenue Code, Buyer agrees to cooperate with Seller in connection with such exchange, including the execution of such documents as may be reasonably necessary to conduct the exchange, provided that there shall be no delay in the agreed-to settlement date, and that any additional costs associated with the exchange are paid solely by Seller. Buyer is aware that Seller anticipates assigning its interest in this Agreement to a third party under an Exchange Agreement and does hereby consent to such assignment. Buyer shall not be required to execute any note, contract, deed or other document providing any liability which would survive the exchange, nor shall Buyer be obligated to take title to any property other than the Property described in this Agreement. Seller shall indemnify and hold harmless Buyer against any liability which arises or is claimed to have arisen from any aspect of the exchange transaction.

18. **COMMERCIAL CONDOMINIUM (10-01)**
    ☒ NOT APPLICABLE
    ☐ APPLICABLE. Buyer acknowledges that the condominium unit to be transferred by the terms of this Agreement is intended for nonresidential use, and that Buyer may agree to modify or waive the applicability of certain provisions of the Uniform Condominium Act of Pennsylvania (68 Pa. C.S. §3101 et. seq.).

19. **RECORDING (5-01)** This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a breach of this Agreement.

20. **ASSIGNMENT (3-85)** This Agreement will be binding upon the parties, their respective heirs, personal representatives, guardians and successors, and, to the extent assignable, on the assigns of the parties hereto. It is expressly understood, however, that the Buyer will not transfer or assign this Agreement without the written consent of the Seller.

222  21. DEPOSIT AND RECOVERY FUND (1-00)
223      (A) Deposits paid by Buyer within 90 days of settlement will be by cash, cashier's or certified check. Deposits, regardless of the form of
224          payment and the person designated as payee, will be paid in U.S. Dollars to Broker or party identified in paragraph 3(B), who will retain
225          them in an escrow account until consummation or termination of this Agreement in conformity with all applicable laws and regulations.

Any uncashed check tendered as deposit may be held pending the acceptance of this offer.

(B) In the event of a dispute over entitlement to deposit monies, a broker holding the monies may, pursuant to Rules and Regulations of the State Real Estate Commission (49 Pa. Code §§ 35.325), retain the monies in escrow until the dispute is resolved. In the event of litigation for the return of deposit monies, a broker will distribute the monies as directed by a final order of court or the written agreement of the parties. Buyer and Seller agree that, in the event any broker or affiliated licensee is joined in litigation for the return of deposit monies, the attorneys fees and costs of the broker(s) and licensee(s) will be paid by the party joining them.

(C) A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658, or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

22. **MAINTENANCE AND RISK OF LOSS (5-01)**

(A) Seller will maintain the Property, and any personal property specified herein, in its present condition, normal wear and tear excepted.

(B) Seller will promptly notify the Buyer if, at any time prior to the time of settlement, all or any portion of the Property is destroyed or damaged as a result of any cause whatsoever.

(C) Seller will bear risk of loss from fire or other causes until time of settlement. In the event that damage to any property included in this sale is not repaired or replaced prior to settlement, Buyer will have the option of rescinding this Agreement and receiving all monies paid on account or of accepting the Property in its then condition together with the proceeds of any insurance recovery obtained by Seller. Buyer is hereby notified that he/she may insure his/her equitable interest in this Property as of the time this Agreement is accepted.

23. **CONDEMNATION (5-01)**

Seller has no knowledge of any current or pending condemnation or eminent domain proceedings that would affect the Property. If any portion of the Property should be subject to condemnation or eminent domain proceedings after the signing of this Agreement, Seller shall immediately advise Buyer, in writing, of such proceedings. Buyer shall have the option to terminate this Agreement by providing written notice to Seller within fifteen (15) days after Buyer learns of the filing of such proceedings, in which case Seller shall return to Buyer all money paid on account of the purchase price by Buyer. Buyer's failure to provide notice of termination within the time stated will constitute a WAIVER of this contingency and all other terms of this Agreement remain in full force and effect.

24. **WAIVER OF CONTINGENCIES (1-00)**

In the event this Agreement is contingent on Buyer's right to inspect and/or repair the Property, Buyer's failure to exercise any of Buyer's options specified in the contingency provision(s) within the time limits will constitute a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 25 of this Agreement.

25. **RELEASE (1-00)** Buyer hereby releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES, and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM, or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injuries and property damage and all of the consequences thereof, whether now known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. This release will survive settlement.

26. **REPRESENTATIONS (5-01)**

(A) Buyer understands that any representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers, or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. It is further understood that this Agreement contains the whole agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B) It is understood that Buyer has inspected the Property before signing this Agreement (including fixtures and any personal property specifically scheduled herein), or has waived the right to do so, and has agreed to purchase it in its present condition unless otherwise stated in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, or of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) Broker(s) may perform services to assist unrepresented parties in complying with the terms of this Agreement.

(D) The headings, captions, and line numbers in this Agreement are meant only to make it easier to find the paragraphs.

27. **DEFAULT (1-00)**

Should Buyer:

(A) Fail to make any additional payments as specified in paragraph 3; OR

(B) Furnish false or incomplete information to Seller, ~~Broker for Seller~~, Broker for Buyer, or the lender, if any, concerning the Buyer's legal or financial status, or fail to cooperate in the processing of the loan application, which acts would result in the failure to obtain the approval of a loan commitment; OR

(C) Violate or fail to fulfill and perform any other terms or conditions of this Agreement;

then in such case, Seller has the option of retaining all sums paid by Buyer, including the deposit monies, 1) on account of purchase price, or 2) as monies to be applied to Seller's damages, or 3) as liquidated damages for such breach, as Seller may elect, unless otherwise checked below.

☒ Seller is limited to retaining sums paid by Buyer, including deposit monies, as liquidated damages.

☐ If Seller elects to retain all sums paid by Buyer, including deposit monies, as liquidated damages, Buyer and Seller will be released from further liability or obligation and this Agreement will be VOID.

28. **CERTIFICATION OF NON-FOREIGN INTEREST (10-01)**

☐ Seller IS a foreign person, foreign corporation, foreign partnership, foreign trust, or foreign estate subject to Section 1445 of the Internal Revenue Code, which provides that a transferee (Buyer) of a U.S. real property interest must withhold tax if the transferor (Seller) is a foreign person.

☒ Seller is NOT a foreign person, foreign corporation, foreign partnership, foreign trust, or a foreign estate as defined by the Internal Revenue Code, or is otherwise not subject to the tax withholding requirements of Section 1445 of the Internal Revenue Code. To inform Buyer that the withholding of tax is not required upon the sale/disposition of the Property by Seller, Seller hereby agrees to furnish Buyer, at or before closing, with the following:

☐ An affidavit stating, under penalty of perjury, the Seller's U.S. taxpayer identification number and that the Seller is not a foreign person.

☐ A "qualifying statement," as defined by statute, that tax withholding is not required by Buyer.

☐ Other: _____

Seller understands that any documentation provided under this provision may be disclosed to the Internal Revenue Service by Buyer, and that any false statements contained therein could result in punishment by fine, imprisonment, or both.

Buyer Initials: _____    A/S-C  Page 4 of 5    Seller Initials: _____

29. **ARBITRATION OF DISPUTES (1-08).** Buyer and Seller agree to arbitrate any dispute between them that cannot be amicably resolved. After written demand for arbitration by either Buyer or Seller, each party will select a competent disinterested arbitrator. The two so selected will select a third. If selection of the third arbitrator cannot be agreed upon within 30 days, either party may request that selection be made by a judge of a court of record in the county in which arbitration is pending. Each party will pay its chosen arbitrator, and bear equally expenses for the third and all other expenses of arbitration. Arbitration will be conducted in accordance with the provisions of Pennsylvania Common Law Arbitration 42 Pa. C.S.A. §7341 et. seq. This agreement to arbitrate disputes arising from this Agreement will survive settlement.

30. **BROKER INDEMNIFICATION (10-01)**
Buyer and Seller represent that the only Brokers involved in this transaction are: __Philip Banks Real Estate__
and that the transaction has not been brought about through the efforts of anyone other than said Brokers. It is agreed that if any claims for brokerage commissions or fees are ever made against Buyer or Seller in connection with this transaction, each party shall pay its own legal fees and costs in connection with such claims. It is further agreed that Buyer and Seller agree to indemnify and hold harmless each other and the above-listed Brokers from and against the non-performance of this Agreement by either party, and from any claim of loss or claim for brokerage commissions, including all legal fees and costs, that may be made by any person or entity. This paragraph shall survive settlement.

31. **GOVERNING LAW (10-01)**
This Agreement shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania.

32. **NOTICE BEFORE SIGNING (5-01)**
Buyer and Seller acknowledge that Brokers have advised them to consult and retain experts concerning the legal and tax effects of this Agreement and the completion of the sale, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equipment, soil, tenancies, title and environmental aspects. Return by facsimile transmission (FAX) of this Agreement, and all addenda, bearing the signatures of all parties, constitutes acceptance of this Agreement.

33. **NOTICE**
All notice requirements under the provisions of this Agreement or by application of statutory or common law will be addressed to the appropriate party, at the addresses listed below via any means of delivery as mutually agreed upon by the parties and stated here: _____

If to Seller: __David Herskowitz__
__579 Christmas Lane, Williston, Vermont 05495__
With a copy to: _____

If to Buyer: __Stephen Schutter__
__2451 Eighteenth Street, Washington, D.C. 20009__
With a copy to: __Philip Banks, 405 Glen Arbor Court, King of Prussia, Pa 19406__

- ☐ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
- ☐ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.
- ☐ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.

Buyer acknowledges receiving a copy of this Agreement at the time of signing.

WITNESS/ATTEST _____ BUYER _/s/ Stephen Schutter_ DATE 12-7-05
BUYER(S) NAME __Stephen Schutter__ SS/TI # _____
Mailing Address __2451 Eighteenth Street, Washington, D.C. 20009__
Phone #s _____ FAX # _____ E-Mail _____

WITNESS/ATTEST _____ BUYER _____ DATE _____
BUYER(S) NAME _____ SS/TI # _____
Mailing Address _____
Phone #s _____ FAX # _____ E-Mail _____

WITNESS/ATTEST _____ BUYER _____ DATE _____
BUYER(S) NAME _____ SS/TI # _____
Mailing Address _____
Phone #s _____ FAX # _____ E-Mail _____

- ☐ Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
- ☐ Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

**VOLUNTARY TRANSFER OF CORPORATE ASSETS** (if applicable): The undersigned acknowledges that he/she is authorized by the Board of Directors to sign this Agreement on behalf of the Seller corporation and that this sale does not constitute a sale, lease, or exchange of all or substantially all the property and assets of the corporation, such as would require the authorization or consent of the shareholders pursuant to 15 P.S. §1311.

**SELLER'S ACCEPTANCE:** Seller hereby accepts the above contract this (date) _____

WITNESS/ATTEST _____ SELLER _DH_ DATE 12-15-05
SELLER(S) NAME __David Herskowitz__ SS/TI # _____
Mailing Address __579 Christmas Lane, Williston, Vermont, 05495__
Phone #s _____ FAX # _____ E-Mail _____

WITNESS/ATTEST _____ SELLER _____ DATE _____
SELLER(S) NAME _____ SS/TI # _____
Mailing Address _____
Phone #s _____ FAX # _____ E-Mail _____

WITNESS/ATTEST _____ SELLER _____ DATE _____
SELLER(S) NAME _____ SS/TI # _____
Mailing Address _____
Phone #s _____ FAX # _____ E-Mail _____

A/S-C  Page 5 of 5          (DH)