UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEPHEN SCHUTTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1846 (RMC) |
| ) | |
| DAVID HERSKOWITZ, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Pending before the Court are motions to dismiss filed by Defendants David Herskowitz and Phillip Banks. Both argue that the Court lacks personal jurisdiction over them and that venue in the District of Columbia is improper. Plaintiff Stephen Schutter opposes the motions and has submitted affidavits in which he purports to provide evidence that demonstrates minimum contacts between Messrs. Herskowitz and Banks and the District of Columbia. The Court finds that Mr. Schutter has failed to make a prima facie showing that Defendants have the minimum contacts with the District of Columbia necessary to support personal jurisdiction. The Court further finds that it is in the interests of justice to transfer this case to the Eastern District of Pennsylvania. Thus, the motions will be granted in part and the case will be transferred.

### I. FACTUAL BACKGROUND

Mr. Schutter resides in the District of Columbia. At some point in late 2005, he became involved in negotiations to purchase a youth hostel located in Philadelphia, Pennsylvania. Mr. Herskowitz, who lives in Vermont, owned the hostel; Mr. Banks, who lives and works in Pennsylvania, is a real estate broker who represented Mr. Schutter in the negotiations to purchase

it. There is no evidence in the record regarding who initiated the negotiations between Mr. Schutter and Mr. Herskowitz. There is a similar absence of evidence regarding who solicited the agency relationship between Mr. Schutter and Mr. Banks. In any event, in December 2005 Mr. Schutter and Mr. Herskowitz executed a purchase agreement (the "Agreement") under which Mr. Herskowitz promised to sell the hostel to Mr. Schutter for $1.6 million. All negotiations among the three parties were by telephone and written correspondence; neither Mr. Herskowitz nor Mr. Banks traveled to the District of Columbia in connection with the transaction. Mr. Schutter executed the Agreement in Washington, D.C., and Mr. Herskowitz executed the Agreement in Pennsylvania.[1]

Under the terms of the Agreement, Mr. Schutter paid $100,000 of the purchase price up front, which Mr. Banks deposited into an escrow account at Bryn Mawr Trust Co., a financial services institution located in Pennsylvania. Although the details are sketchy, at some point Mr. Schutter learned that the hostel had a maximum occupancy of 52 beds, which was contrary to representations made by Mr. Herskowitz during negotiations that the occupancy was 70 beds. Based on this alleged misrepresentation, the parties agreed that the Agreement would be terminated and the $100,000 in escrow would be returned to Mr. Schutter. Mr. Schutter contends that despite promises to do so, neither Mr. Banks nor Mr. Herskowitz has returned the $100,000.

Mr. Schutter filed this action on October 27, 2006. He asserts claims for breach of contract, fraudulent inducement to contract, breach of fiduciary duty, unjust enrichment, and fraud

---

[1] Mr. Herskowitz's sworn affidavit states that he executed the contract in Pennsylvania. Herskowitz Aff. ¶ 3. His brief in support of his motion to dismiss, however, states that he executed the contract in Vermont, although it cites the paragraph of the affidavit which states that he signed it in Pennsylvania. *See* Herskowitz Mem. of P. & A. In Supp. of Mot. to Dismiss at 1. The Court assumes that the affidavit is correct and that the contradictory statement in the brief is a scrivener's error. In either case, there is no dispute that Mr. Herskowitz executed the Agreement outside the District of Columbia.

and misrepresentation.[2] Mr. Herskowitz moved to dismiss on November 11, 2006, and on December 11, 2006, Mr. Banks did the same. The motions are now fully briefed and ripe for decision.

## II. LEGAL STANDARDS

### A. Rule 12(b)(2)

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). The plaintiff must allege specific acts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). Bare allegations and conclusory statements are insufficient. *See id.*

In determining whether a factual basis for personal jurisdiction exists, the court should resolve factual discrepancies in the record in favor of the plaintiff. *Crane*, 894 F.2d at 456. The court need not treat all the plaintiff's allegations as true, however. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). Instead, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.*

### B. Rule 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may, at the lawsuit's outset, test whether the plaintiff "has brought the case in a venue that the law deems appropriate." *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006). "If the plaintiff's chosen forum is an

---

[2] Subject matter jurisdiction is based on diversity of citizenship because Mr. Schutter and Defendants are residents of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Mr. Herskowitz challenges subject matter jurisdiction based on an arbitration clause in the Agreement but, because the Court concludes that it lacks personal jurisdiction over Defendants, it need not address that argument.

improper venue under applicable statutes, or is otherwise inconvenient, the Court may dismiss the action or transfer the case to a district where venue would be proper or more convenient." *Id.* (citing 28 U.S.C. § 1406 (providing for dismissal or transfer when venue is defective) and 28 U.S.C. § 1404 (allowing a district to transfer venue "for the convenience of the parties and witnesses")). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1352 (2d ed. 1987) (noting that placing the burden on the plaintiff "seems correct inasmuch as it is plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue.").

### III. ANALYSIS

#### A.  Personal Jurisdiction

Both Mr. Herskowitz and Mr. Banks argue that dismissal under Rule 12(b)(2) is warranted because they are not subject to personal jurisdiction in the District of Columbia. It is well settled that the District of Columbia's long-arm statute, D.C. Code § 13-423(a)(1), "'is as far-reaching as due process allows, meaning that only minimum contacts with the District are necessary to sustain jurisdiction here.'" *Mwani v. bin Laden*, 417 F.3d 1, 9 (D.C. Cir. 2005) (quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1089 (D.C. Cir. 1998)). Whether a defendant has established "minimum contacts" with the District of Columbia turns on whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). These minimum contacts must be grounded in "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits

and protections of its laws." *Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1988). Stated differently, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Generally, a plaintiff may not rely only on his own activity within the forum to establish the existence of the defendant's minimum contacts. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

"[W]ith respect to interstate contractual obligations," such as those at issue in this case, the Supreme Court has "emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanction in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (internal quotation marks omitted). This standard demands that an out-of-state resident do more than simply enter into a contract with a resident of the forum state. *Helmer v. Doletskaya*, 393 F.3d 201, 206 (D.C. Cir. 2004) ("The Supreme Court has held that a contract with a resident of a forum does not by itself establish minimum contacts with the forum.") (citing *Burger King*, 471 U.S. at 478). Only if a non-resident "enters into a contract that has a 'substantial connection' with the forum" will he be found to have minimum contacts with the forum:

> Because a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction, a court must evaluate the prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine whether the defendant purposefully established minimum contacts within the forum.

*Helmer*, 393 F.3d at 205 (internal quotation marks omitted).

Thus, the questions here are whether the Agreement and other business relationships between Messrs. Herskowitz and Banks and Mr. Schutter had a "substantial connection" with the District of Columbia, or whether Mr. Herskowitz or Mr. Banks otherwise purposefully availed himself of conducting business in the District.

### 1.   Mr. Herskowitz

In response to Mr. Herskowitz's challenge to the Court's jurisdiction, Mr. Schutter states that "[d]uring the fourth quarter of 2005, [he] negotiated with Mr. Herskowitz for the purchase of a youth hostel . . . located in Philadelphia, Pennsylvania. The negotiations resulted in an Agreement dated December 2, 2005." Schutter Aff. in Opp'n to Herskowitz ¶ 2. He further states that throughout the negotiations he "communicated frequently with Mr. Herskowitz from [his] Washington DC residence," Mr. Herskowitz called him at his District of Columbia residence, and Mr. Herskowitz knew that he lived in the District of Columbia. *Id.* ¶ 3. Finally, Mr. Schutter asserts that he received and executed the Agreement at his District of Columbia residence, tendered payment pursuant to the Agreement from the District of Columbia, and suffered damages from the breach of the Agreement in the District of Columbia. *Id.* ¶¶ 4-7. Mr. Schutter does not indicate who initiated the negotiations, how many times he talked to Mr. Herskowitz during the negotiations, or if he and Mr. Herskowitz ever met in person.

Mr. Schutter has fallen short of meeting his burden of demonstrating that the Court has jurisdiction. The Supreme Court and D.C. Circuit have been clear that a contract with a resident of the forum is not by itself sufficient to establish minimum contacts; the contract must have a "substantial connection" with the forum, which depends upon a realistic analysis of the parties' business relationship. *See Burger King*, 471 U.S. at 479. Mr. Schutter asserts that he negotiated by

6

phone with Mr. Herskowitz while he was at his home in the District of Columbia, and that those negotiations led to a contract for the purchase of a hostel in Pennsylvania. Although Mr. Schutter was in the District of Columbia during the negotiations, there is no indication that Mr. Herskowitz "reached out" to the District of Columbia to establish "continuing relationships and obligations" with a District resident. *Id.* at 473. Moreover, the Agreement dealt exclusively with business and property interests in Pennsylvania; thus, the Agreement's intended future consequences were limited to that State, not the District of Columbia. In addition, the Agreement contained an arbitration clause and a choice-of-law provision, both of which indicated that Pennsylvania law governed the Agreement and any disputes arising from it. *See, e.g.*, *S.E.C. v. Overseas Mgmt., Ltd.*, No. 04-302, 2005 WL 3627141, at *6 (D.D.C. Jan. 7, 2005) ("While agreements to submit to a particular jurisdiction for resolution of disputes may not conclusively establish personal jurisdiction, it is nevertheless one factor relevant in an evaluation of the contract in question.") (internal citation omitted). On these facts, the Court cannot find that the Agreement had a "substantial connection" with the District of Columbia such that Mr. Herskowitz purposefully availed himself of conducting business here. *Cf. Helmer*, 393 F.3d at 183-84 (holding that contract between D.C. resident and Muscovite to purchase apartment in Moscow had no substantial connection to the District).

    The facts of this case are not appreciably different than those presented in *Gibbons & Co., Inc. v. Roskamp Inst.*, No. 06-720, 2006 WL 2506646 (D.D.C. Aug. 28, 2006). In *Gibbons*, the plaintiff — Gibbons & Co., a D.C. corporation — entered into a contract with a Roskamp, a Florida company, in which Gibbons agreed to lobby Congress on Roskamp's behalf. *Id.* at *1. During the course of dealing between the parties, they exchanged between 50 and 75 emails and more than 75 telephone calls; in addition, representatives of Roskamp traveled to the District to meet

with Gibbons and Congressional officials. *Id.* The relationship eventually soured, and Gibbons sued Roskamp in this Court for breach of contract. *Id.* The Court held that Gibbons had failed to establish that Roskamp had minimum contacts with the District of Columbia. *Id.* at *3. First, the Court reasoned that Gibbons had relied primarily on its own activities in the District, which is insufficient to establish Roskamp's minimum contacts: "[A] [p]laintiff's unilateral activities, even if performed with the goal of ultimately benefitting the defendant, do not satisfy the requirement that [the] defendant itself have some minimum contact with the District." *Id.* Second, the emails and telephone communications were "incidental to the contract," and "the mere fact that [Roskamp] allegedly retained [Gibbons's] professional services, which set into motion [Gibbons's] activities within the District, does not without more constitute an invocation by [Roskamp] of the benefits and protections of the District's laws." *Id.*; *see also FC Inv. Group LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 39 (D.D.C. 2007) (holding that the defendant's "regular" telephone calls to the District did not satisfy the "transacting business" requirement of the D.C. long-arm statute); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075-77 (10th Cir. 1995) (holding that periodic telephone calls and faxes between Nevada and Oregon residents and Utah company in the course of contract negotiations were insufficient to establish minimum contacts with Utah).

Here, the record reveals that Mr. Herskowitz had even less contact with the District of Columbia than did the defendant in *Gibbons*. A few telephone calls and some unilateral conduct by Mr. Schutter within the District are simply not enough to establish that Mr. Herskowitz purposefully availed himself of the privilege of conducting activities in the District of Columbia. The Court therefore lacks personal jurisdiction over Mr. Herskowitz.

*2.   Mr. Banks*

With respect to Mr. Banks, the evidence is similarly lean. Mr. Schutter submitted an affidavit in which he states that in 2005 he was "introduced to Mr. Philip Banks, who represented . . . that he could assist in the procurement of financing and in drafting and negotiating a contract with Mr. David Herskowitz for the purchase of a youth hostel located in Philadelphia, Pennsylvania. The negotiations resulted in an Agreement . . . which was drafted by Mr. Banks for the signature of both parties." Schutter Aff. in Opp'n to Banks ¶ 2. He further states that Mr. Banks represented that he had substantial business contacts in the District of Columbia and provided Mr. Schutter with a list of those contacts. *Id.* ¶ 3. Although it is somewhat unclear, Mr. Schutter also avers that Mr. Banks had a "Washington DC telephone number," presumably meaning a number with a "202" area code, and that most of the telephone conversations he had with Mr. Banks occurred on Mr. Banks's "local" telephone number. *Id.* ¶ 4. Mr. Schutter also states that he received and executed the Agreement in Washington, D.C., that he tendered payment pursuant to the Agreement from Washington, D.C., and that he suffered damages from the breach of the Agreement in Washington, D.C. *Id.* ¶¶ 5-9. Mr. Banks, who is proceeding *pro se*, does not specifically refute these facts; he states only that he "has not done business within the District of Columbia with reference to this matter." Banks's Mot. to Dismiss ¶ 15.

First, it is important to note that Mr. Banks was not a party to the Agreement. Thus, Mr. Schutter's statements that he received and executed the Agreement and made the down payment in the District of Columbia are not relevant to the minimum contacts analysis as to Mr. Banks. What is relevant is the arrangement and course of dealing between Mr. Banks and Mr. Schutter. On that issue, the record is sparse. All Mr. Schutter says is that he "was introduced" to Mr. Banks; he does

9

not say who introduced him to Mr. Banks, or whether Mr. Banks solicited his business or otherwise purposefully reached out to the District of Columbia in order to establish the relationship between them. Further, the arrangement itself — that Mr. Banks would represent Mr. Schutter in a real estate transaction in which both the property and seller were located outside the District of Columbia — evidences no substantial connection with the District. Moreover, there is almost nothing in the record indicating what Mr. Banks actually did in connection with that transaction. The Agreement, which Mr. Banks "drafted," Schutter Aff. ¶ 2, appears to be nothing more than a form contract. Mr. Banks received Mr. Schutter's down payment and placed it into an escrow account, but those acts occurred in Pennsylvania. *See id.* ¶ 8; Agreement ¶ 3(B). Thus, Mr. Schutter fails to adduce evidence sufficient to show that Mr. Banks had minimum contacts with the District of Columbia in connection with the events underlying his claims. *See, e.g.*, *FC Inv. Group*, 479 F. Supp. 2d at 39.

Indeed, Mr. Schutter's affidavit seems to be aimed more at establishing that Mr. Banks is subject to general jurisdiction in the District of Columbia. Under the general jurisdiction doctrine, "a court may exercise personal jurisdiction over a non-resident defendant when that non-resident defendant has engaged in 'continuous and systematic' general business contacts in the forum." *Id.* at 36. Mr. Schutter states that Mr. Banks represented that he "regularly assisted businesses and individuals in the District with real estate transactions and provided [Mr. Schutter] with business contacts listing local District of Columbia telephone numbers," Schutter Aff. ¶ 3; he also states that he "believed [Mr. Banks] to have significant business relationships in the District of Columbia," and that Mr. Banks had a "local" telephone number, *id.* ¶ 5. These vague, uncorroborated statements are, however, insufficient to establish that Mr. Banks has "continuous and systematic" business contacts with the District apart from the transaction at issue in this case. *See*

10

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003) ("In order to meet its burden, plaintiff must allege specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations."). Although Mr. Schutter's affidavit claims that Mr. Banks has significant business dealings in the District, the Court does not assign the affidavit serious weight because Mr. Schutter provides no specifics and no documentary or other contemporaneous evidence, such as the alleged list of D.C. contacts. *See id.* ("When considering personal jurisdiction, the Court need not treat all of the plaintiff's allegations as true. Instead, the court may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts.") (internal quotation marks omitted). The Court simply cannot find that it has general jurisdiction over Mr. Banks based on nothing more than Mr. Schutter's sweeping assertion that Mr. Banks regularly conducts business in the District of Columbia.

    **B.**    **Venue**

In addition to seeking dismissal based on lack of personal jurisdiction, both Defendants also argue that venue in the District of Columbia is not proper. Even though the Court has concluded that it lacks personal jurisdiction over Messrs. Herskowitz and Banks, it may nonetheless transfer venue if it is in the interests of justice to do so. *See, e.g.*, *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993) ("[W]e may transfer the case even though it is likely that we do not have personal jurisdiction over appellees") (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)). The Court finds that it is in the interests of justice to transfer this action, and therefore will transfer the case to the Eastern District of Pennsylvania.[3]

---

[3] Although Defendants moved only to dismiss for improper venue, not to transfer venue, the Court may consider transfer *sua sponte*. *See, e.g.*, *Schreiber v. Kohn*, 434 F. Supp. 2d 1, 2-3 (D.D.C. 2006) (transferring case *sua sponte* under 28 U.S.C. § 1404(a)).

There are two statutory provisions allowing district courts to transfer venue: 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). The former Section governs the transfer of so-called "convenience" cases — that is, cases in which venue is proper in the original court but the court decides that transfer is warranted for the "convenience of the parties and witnesses." The latter Section controls in cases where venue is improper in the original court but, rather than dismissing the action, the court decides to transfer to a district in which venue is proper. Despite its lack of personal jurisdiction, this Court may transfer venue under either Section 1404(a) or Section 1406(a). *See In re Vitamins Antitrust Litig.*, 270 F. Supp. 2d 15, 37 (D.D.C. 2003).

On the current record, the Court concludes that transfer to the Eastern District of Pennsylvania is warranted under either Section 1404(a) or Section 1406(a). Under Section 1404(a), a court may transfer venue when two requirements are met: (1) the proposed transferee district is one in which the action might have been brought originally; and (2) the court decides, in the exercise of its discretion, that the transfer is warranted. *See DeLoach v. Phillip Morris Cos.*, 132 F. Supp. 2d 22, 24-25 (D.D.C. 2000). In deciding whether transfer is warranted, courts should consider the convenience of the parties and witnesses, as well as the "interests of justice." *See* 28 U.S.C. § 1404(a). Similarly, under Section 1406(a), a court may transfer venue when it is in "the interest of justice." That decision is within the district court's discretion. *Davis v. Am. Soc'y of Civil Eng'rs*, 290 F. Supp. 2d 116, 120 (D.D.C. 2003). Generally, the interests of justice favor transfer rather than dismissal. *Id.* Before transferring under Section 1406(a), the court must ensure that "venue is proper and that the defendants are subject to personal jurisdiction in the transferee forum." *Id.*

It is clear on the facts in the record that this case could have been brought in the Eastern District of Pennsylvania. The property that is the subject of the Agreement is located in that

District and is owned by Mr. Herskowitz, who held the property out for sale. Mr. Banks, who represented Mr. Schutter in the negotiations, was operating from his offices within that District. And the $100,000 down payment that Defendants are allegedly withholding from Mr. Schutter was deposited in an escrow account located in that District. Thus, venue in that District would be proper under 28 U.S.C. § 1391(a)(2), which allows, in a case based on diversity of citizenship, venue in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." Moreover, because Mr. Banks lives in that District, and because Mr. Herskowtiz owns property there and contracted to sell that property to Mr. Schutter, it is almost certain that both Defendants have minimum contacts with that jurisdiction such that they would be subject to personal jurisdiction there.

In deciding whether transfer under Section 1404(a) is warranted, courts should balance the public and private interests at stake, including but not limited to:

> (1) plaintiffs' privilege of choosing the forum; (2) defendant's preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home.

*Lentz v. Eli Lily & Co.*, 464 F. Supp. 2d 35, 37 (D.D.C. 2006).

The majority of these factors weigh in favor of transfer. Obviously Messrs. Herskowitz and Banks believe that this case should not be heard in the District of Columbia, and it would be more convenient for both to have the case in Philadelphia since it is close to Mr. Banks's residence and Mr. Herskowitz has business interests there. Moreover, because the property that is

the subject of the Agreement is located in Philadelphia, and because Mr. Schutter's claims are based in part on alleged misrepresentations about the physical characteristics of the hostel, access to sources of proof favors venue in the Eastern District of Pennsylvania. With respect to the public factors, Mr. Schutter's contract claims will be governed by Pennsylvania law, which is more familiar to the District Court in the Eastern District of Pennsylvania than it is to this Court. And although this dispute is somewhat interstate in nature, it is "local" to the Eastern District of Pennsylvania in the sense that the real property and business that are the heart of this action are located in that District. *See Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1212 (D. Haw. 2002) (holding, in real estate contract action, that the jurisdiction in which the property was located had a substantial local interest in resolving the dispute). And, perhaps most importantly, both Mr. Herskowitz and Mr. Banks would be subject to personal jurisdiction in that venue. Thus, the interests of justice favor transfer to the Eastern District of Pennsylvania.

### IV. CONCLUSION

Mr. Schutter fails to present evidence that either Mr. Herskowitz or Mr. Banks had minimum contacts with the District of Columbia. As a result, the Court lacks personal jurisdiction over them. The Court further concludes that transferring this action to the Eastern District of Pennsylvania is in the interests of justice. Thus, Defendants' motions will be granted in part and the case will be transferred to the Eastern District of Pennsylvania. A memorializing order accompanies this Memorandum Opinion.

Date: July 5, 2007
/s/
ROSEMARY M. COLLYER
United States District Judge